### In re Nancy Dale BAXTER.

**James F. DOWDEN, Trustee, Plaintiff,**

v.

**TEACHERS INSURANCE AND ANNUITY ASSN., and College Retirement Equities Fund, Defendants.**

Bankruptcy No. 90–10276 S.
Adv. No. 91–1002.

United States Bankruptcy Court,
E.D. Arkansas,
Batesville Division.

Jan. 15, 1992.

---

* A motion to dismiss filed by the trustee is set for February 4, 1992.

James Dowden, Little Rock, Ark., trustee.

Sylvia Borchert, Little Rock, for trustee.

Steve Joiner, Little Rock, for defendants.

## MEMORANDUM OPINION

MARY D. SCOTT, Bankruptcy Judge.

The cause before the Court is a Complaint seeking turnover of property filed by the Trustee in this Chapter 7 case against Teachers Insurance and Annuity Association and College Retirement Equities Fund (TIAA–CREF). Two pre-trial conferences regarding the parties' Motions for Summary Judgment have been held. On July 5, 1991, the Court initially denied these Motions finding that the better course to follow would be to proceed with a trial on the remaining issues.

On September 17, 1991, at the second pre-trial conference the parties advised the Court they could stipulate to the facts and would submit supplemental briefs incorporating the earlier arguments in support of the original summary judgment Motions as well as any additional argument. The Joint Stipulation of facts and both Supplemental Briefs were timely filed on October 31, 1991, and the matter was taken under submission.

The parties on October 31, 1991, filed with the Court a document which revealed that they stipulated to the following facts and eight exhibits:

1. The Debtor, Nancy Dale Baxter, was an employee of Arkansas College in Batesville, Arkansas until October of 1990.

2. As a mandatory condition of employment, the Debtor became a participant in the "Arkansas College TIAA–CREF Retirement Plan" (the "Plan"). A copy of the Plan as in effect through December 31, 1990, is attached as Exhibit "A". A copy of the Plan as became effective on January 1, 1991, is attached as Exhibit "B". A copy of the booklet "Retirement Annuities 1989" is attached as Exhibit "C". The booklet "Retirement Annuities 1989" is the current version of the booklet referred to in the Plan as the "Your Retirement Annuity" booklet.

3. The Debtor's rights and duties with respect to the Plan are governed by the Plan.

4. A copy of the Debtor's TIAA Annuity Contract, TIAA Contract Number A453021–6, as amended, is attached as Exhibit "D".

5. A copy of the Debtor's CREF Retirement Unit–Annuity Certificate, CREF Contract Number P453021–3, as amended, is attached as Exhibit "E".

6. A copy of the Debtor's July 22, 1970 Application for the TIAA Contract and the CREF Contract is attached as Exhibit "F".

7. A copy of the Debtor's March 23, 1990 Designation of Beneficiary form is attached as Exhibit "G". The Debtor's named beneficiaries are her twenty-two (22) year old daughter and her eighteen (18) year old son. Her son is a dependent of the Debtor.

8. A copy of a brochure disseminated to CREF plan participants, "Rules for De-

termining Benefits," is attached as Exhibit "H".

9. Mandatory Plan contributions by the Debtor and contributions by Debtor's employer were applied as premiums on the TIAA Contract and the CREF Contract. Pursuant to the Debtor's election, seventy-five percent (75%) of the remitted contribution was applied for premiums for the TIAA Contract and twenty-five percent (25%) was applied for the premium on the CREF Contract.

10. Under the Plan, both the TIAA Contract and the CREF Contract are for the sole purpose of providing a retirement or death benefit and are solely the property of the individual participant.

11. The accumulations associated with the TIAA Contract were $42,335.91 as of February 21, 1991.

12. The accumulations associated with the CREF Contract were $22,178.11 as of February 21, 1991. The accumulation is based on a set number of Accumulation Units purchased times a variable Unit Value. The value of the accumulation units associated with the CREF Contract varies according to CREF's portfolio of equities.

13. The Debtor has designated her annuity starting date under the TIAA Contract and the CREF Contract as the first day of the month following her sixty-fifth (65th) birthday, *i.e.*, August 1, 2009.

14. The Debtor will reach age fifty-nine and one-half (59½) in January of 2003.

15. The Debtor is fully and immediately vested as to all contributions used to fund the TIAA Contract and the CREF Contract pursuant to the Retirement Annuities 1989 booklet attached as Exhibit "C".

16. TIAA-CREF treats the accumulations associated with the TIAA Contract and the CREF Contract as assets of TIAA-CREF on TIAA-CREF's books. Said accumulations are commingled with the accumulations associated with the contracts of all other TIAA-CREF participants.

17. TIAA-CREF does not maintain a separate account or accounts in which "funds" belonging to the Debtor are kept or maintained. TIAA-CREF does not maintain a separate account or accounts in which the accumulations associated with the TIAA Contract or the CREF Contract are kept or maintained. The rights of TIAA-CREF participants, including the Debtor, to receive future payments pursuant to their TIAA and CREF annuity contracts are treated as inchoate choses in action on TIAA-CREF's books.

18. The accumulations associated with the CREF Contract may be transferred to the TIAA Contract. Complete transfers of the accumulations associated with the CREF Contract to the TIAA Contract may be requested by the participant at any time and may be made at any time. Partial transfers of the accumulations associated with the CREF Contract to the TIAA Contract may be made at any time as long as a minimum transfer amount is requested. The accumulations associated with the TIAA Contract cannot be moved to the CREF Contract or to any other investment vehicle.

19. The TIAA and CREF Application signed by the Debtor and attached as Exhibit "F" states that "I understand ... that TIAA and CREF annuities are non-assignable and that they have no provision for cash surrender or loans...."

20. The cover page of the TIAA Contract and the CREF Contract each state that "this [contract/certificate] makes no provision for cash surrender or loans and cannot be assigned."

21. The TIAA Contract and the CREF Contract each provide that "any assignment or pledge of this [contract/certificate] or of any benefits hereunder will be void and of no effect."

22. The TIAA Contract provides that "the benefits, options, rights and privileges accruing to any Beneficiary will not be transferable or subject to surrender, commutation, or anticipation, except as may be otherwise endorsed on this contract. To the extent permitted by law, annuity and other benefit payments will not be subject to the claims of any

creditor of any Beneficiary or to execution or to legal process."

23. The CREF Contract provides that "Benefits under this certificate are protected by the following clause contained in the statute of the State of New York establishing CREF:

No money or other benefit provided or rendered by the corporation hereby formed, nor any rights or interests of any participating person in any benefit provided by said corporation, or of any beneficiary of any such person, or of any others who may have a right derived from such person or beneficiary, shall be subject to assignment or pledge, or be liable to attachment, garnishment, or other process, or to be seized, taken, appropriated, or applied by any legal or equitable process or operation of law to pay any debt or liability of any such person, or of any beneficiary of any such person, or of any others who may have a right under any such person or beneficiary.

24. The TIAA Contract and the CREF Contract are each governed by the laws of the State of New York.

This Court has jurisdiction to decide the issues pursuant to 28 U.S.C. §§ 157(a) and 1334. Moreover, the Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1). *See* 28 U.S.C. § 157(b)(2)(E).

The Trustee's Complaint seeks turnover of funds accumulated in two (2) retirement annuity contracts pursuant to which the debtor is an annuitant. TIAA–CREF asserts that the fund accumulations sought by the Trustee are not presently payable and were not debtor's prior to the filing of her bankruptcy petition on November 19, 1990. TIAA–CREF asks the Court to deny the Trustee's request and determine that (1) the funds are not property of the debtor's bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2) and that, (2) the debtor's only interest in the contracts is a limited inchoate right to receive monthly annuity payments at some point in the future upon the occurrence of certain contractual conditions precedent.

The Court has reviewed the stipulations of fact as well all documents submitted by the parties. In addition, the Court has considered the very thorough written arguments submitted. For the following reasons the Court concludes that the arguments advanced by TIAA–CREF must prevail and the Trustee's request for turnover of funds denied. The Court finds that the TIAA–CREF retirement contracts are excluded from the debtor's estate pursuant to 11 U.S.C. § 541(c)(2) which provides as follows:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

The Court reaches its conclusion being fully aware of the split of authority among the circuit courts of appeals over standards for determining whether a retirement plan is excluded from the estate pursuant to this subsection of the Bankruptcy Code.

The subject matter and all arguments advanced pro and con have been thoroughly reviewed by several circuit courts of appeals as well as district, bankruptcy and state courts. The parties ably review the differing opinions and rationales relied upon by those courts. This Court is persuaded by those courts which reach the conclusion that a tax-qualified ERISA pension or profit sharing plan is exempt from the bankruptcy estate under 11 U.S.C. § 541(c)(2). *See Anderson v. Raine (In re Moore),* 907 F.2d 1476, 1477 (4th Cir.1990); *Forbes v. Lucas (In re Lucas),* 924 F.2d 597, 601 (6th Cir.), cert. denied, — U.S. —, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); *Morter v. Farm Credit Services (In re Morter),* 937 F.2d 354 (7th Cir.), *petition for cert. filed,* U.S.L.W. 2138 (U.S. Nov. 26, 1991); *Velis v. Kardanis,* 949 F.2d 78 (3d Cir.1991).

On December 5, 1991 the Tenth Circuit agreed with these courts. *Gladwell v. Harline (In re Harline),* 950 F.2d 669 (10th Cir.1991). Its opinion thoroughly outlines the various relevant arguments considered by the courts reviewing this timely issue. These courts all recognize TIAA–CREF's

argument that recent Supreme Court decisions command the result it seeks. *Pension Benefit Guaranty Corp. v. LTV Corporation*, 496 U.S. 633, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990); *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990); *Toibb v. Radloff*, — U.S. ——, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991). The language of section 541(c)(2) is clear.

This Court reaches its conclusion aware not only of these cases but decisions by the Eighth Circuit Court of Appeals. *See Humphrey v. Buckley (In re Swanson)*, 873 F.2d 1121 (8th Cir.1989) and *Samore v. Graham (In re Graham)*, 726 F.2d 1268 (8th Cir.1984). The Trustee argues that precedent in the Eighth Circuit should result in an opposite decision from the one reached here, but this Court does not agree. Rather, the Court agrees with TIAA–CREF's reconciliation of the Eighth Circuit decision with those circuits excluding pension funds similar to the ones in this case from the debtor's estate. It also

takes into consideration that the Eighth Circuit opinions did not involve TIAA–CREF contracts and were decided before the Supreme Court cases cited earlier.[1]

The proper inquiry, then, under section 541(c)(2), is not whether the accumulated funds are a traditional spendthrift trust, but whether the retirement plan bars the beneficiary and his/her creditors from reaching the funds. If it does, the plan is tantamount to a spendthrift trust, *i.e.*, "on balance" the plan has the "necessary characteristics" of a spendthrift trust. *Humphrey v. Buckley (In re Swanson)*, 873 F.2d 1121, 1124 (8th Cir.1989). The TIAA–CREF plan is properly excluded under 11 U.S.C. § 541(c)(2). The Supreme Court has made it clear that the Bankruptcy Code means what it says. Judicial interpretations are discouraged. Dissatisfaction with the statute should be remedied by Congress. Section 541(c)(2) provides that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankrupt-

---

1. *See Gladwell v. Harline (In re Harline)*, 950 F.2d 669 (10th Cir.1991), wherein the court made the following relevant observations:

> Finding no ambiguity in the language of 541(c)(2), resort to legislative history is inappropriate. See *Toibb v. Radloff*, [— U.S. ——], 111 S.Ct. 2197, 2200 [115 L.Ed.2d 145] (1991). But even considering the legislative history, which we acknowledge was almost exclusively concerned with preserving state-recognized spendthrift trusts, we do not find "a clearly expressed legislative intention" to limit the meaning of 541(c)(2) exclusively to state-recognized spendthrift trusts. See *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 [100 S.Ct. 2051–2056, 64 L.Ed.2d 766] (1980) ("Absent a clearly expressed legislative intention to the contrary, the language must ordinarily be regarded as conclusive."); see also *Toibb*, 111 S.Ct. at 2200 (quoting Consumer Prod. Safety Comm'n). In the legislative history we see an explicit desire to allow state-recognized spendthrift trusts but no explicit rejection of federal law including ERISA. We also are persuaded by the incongruity inherent in the narrower interpretation which would result in ERISA's antialienation provisions trumping state law until bankruptcy, but withdrawing that protection upon bankruptcy unless state law would give it.

. . . . .

> Our position is reenforced by the recent Supreme Court decision in *Guidry v. Sheet Metal Workers National Pension Fund*, [493 U.S. 365], 110 S.Ct. 680 [107 L.Ed.2d 782] (1990), which refused imposition of a constructive trust on a participant's interest in a qualified pension plan for his embezzlement, in the face of another federal statute that arguably would permit such imposition in some circumstances. The Supreme Court relied strongly on ERISA's intended protection of participants' pension benefits: Section 206(d) [of ERISA] reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.

> As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text. The creation of such exceptions, in our view, would be especially problematic in the context of an anti-garnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt

. . . . .

> Understandably, there may be a natural distaste for the result we reach here. The statute, however, is clear.

cy law is enforceable in a case under this title."

The fact that the Eighth Circuit discussed and agreed with arguments recognized by courts disagreeing with the result reached here does not necessarily place its decision in that column. Rather, its conclusion that "on balance" plans have the "necessary characteristics" clearly removes its interpretation from a strict requirement that the fund be a traditional spendthrift trust under state law.[2]

A separate Judgment will be entered in accordance with these findings.

IT IS SO ORDERED.

## JUDGMENT

Based upon the Court's findings of fact and conclusions of law contained in a Memorandum Opinion of this same date, it is hereby

ORDERED that the TIAA–CREF retirement contracts are excluded from the debtor's estate pursuant to 11 U.S.C. § 541(c)(2).

IT IS SO ORDERED.

---

**2.** Indeed, the Eighth Circuit stated that, "we do not intend to state a broad rule that monies in any statutory trust are not excluded from the bankruptcy estate under § 541(c)(2)." *Swanson,* 873 F.2d at 1124.