**In re Emmitt & Gloria LYONS, Debtors.**

**Bankruptcy No. 87–01117.**

United States Bankruptcy Court,
District of Columbia.

Aug. 14, 1992.

Ronald L. Schwartz, Silver Spring, MD, for debtor.

Cynthia A. Niklas, Washington, DC

Edward J. Snyder, Henry S. Friedman, Tax Div., U.S. Dept. of Justice, Washington, DC, for the IRS.

## DECISION RE DEBTORS' OBJECTION TO PROOF OF CLAIM OF INTERNAL REVENUE SERVICE

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The court has under consideration the objection of Emmitt H. Lyons and Gloria Lyons ("the debtors") to the proof of claim filed by the Internal Revenue Service ("IRS"). The only unresolved issues are

whether the $14,740.40 claim of the IRS for prepetition taxes owed by debtor Emmitt H. Lyons, Sr., is secured by his interest in $3,000 worth of personal goods and whether the claim is secured by his right to receive future income under certain annuities. To the extent that the IRS' secured claim is oversecured, it is entitled to postpetition interest on such claim. 11 U.S.C. § 506(b).

## FACTS

The debtors filed their chapter 13 petition on December 18, 1987. The IRS asserts secured claims in the amount of $14,740.40 against Mr. Lyons for income taxes, interest and penalties for the years 1980 through 1982 based on filed notices of tax liens.[1] The IRS asserts a claim of $1,009.53 against Mrs. Lyons which is concededly secured by her $3,091.40 half-share of equity in the debtors' residence.

The debtors' chapter 13 statement reflects jointly owned personal property consisting of household goods (beds, tables, chairs, sofas, appliances, etc.) valued at $2,000.00, and personal effects (clothing, jewelry, sports equipment, etc.) valued at $1,000.00. The debtors claimed the household goods and personal effects as exempt property under 11 U.S.C. § 522(c)(3).

On December 1, 1972, Mr. Lyons was issued a retirement annuity contract by the Teachers Insurance and Annuity Association ("TIAA") and a retirement unit annuity certificate by the College Retirement Equities Fund ("CREF"). On the date of filing, Mr. Lyons had a guaranteed right to receive future payments (and had been receiving payments) from four TIAA/CREF payout annuity contracts. Mr. Lyons acquired his rights in the retirement plan through his employment as a college professor where he had been a member for many years of this nationwide college professors retirement program.[2] Under the provisions of these contracts, the debtor's

---

1. The court has disallowed a claim for the 1977 tax year as barred by the statute of limitations.

2. TIAA/CREF provides funding for the retirement programs of over half a million employees

in over 3000 colleges and universities. *See generally Morter v. Farm Credit Services,* 937 F.2d 354 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 2991, 120 L.Ed.2d 868 (June 22, 1992).

employer paid premiums which accumulated in each of these funds.

During 1984 and 1986, Mr. Lyons used his accumulated premiums and shares to purchase two TIAA payout annuity contracts and two CREF payout unit-annuity contracts, which have provided income to the debtor annually since that time. Some of the annuity contracts have provisions for monthly annuity payments, some for annual payments. The contracts have varying minimum guaranteed periods of payment of from ten to twenty years. Mr. Lyons' employer paid all of the premiums which have accumulated in the pension fund which was created under and is governed by the laws of the State of New York.

In their chapter 13 statement, the debtors valued the retirement accounts at $18,681.42 as of the date of filing. The annuity payments being made to Mr. Lyons vary from year to year depending on the value of the retirement fund's investments. During 1987, for example, Mr. Lyons received payments totalling $7,000.00 on account of his annuities.

Each of the TIAA/CREF deferred annuity contracts expressly provides that it "makes no provisions for cash surrender or loans and cannot be assigned" and each has anti-alienation and creditor blocking provisions as follows:

> **No assignment.** Any assignment or pledge of this certificate or of any benefits hereunder will be void and of no effect.
>
> \*   \*   \*   \*   \*   \*
>
> **Protection Against Claims of Creditors.** The benefits, options, rights, and privileges accruing to any Beneficiary will not be transferable or subject to surrender, commutation or anticipation, except as may be otherwise endorsed on this contract. To the extent permitted by law, annuity and other benefit payments will not be subject to the claims of any creditors of any Beneficiary or to execution or to legal process.

TIAA/CREF deferred annuity contract, paras. 15 and 16. Similarly, the payout annuity contracts provide that "neither you nor any other person may assign, pledge, or transfer ownership of this contract or any benefits under its terms", and that "the benefits and rights accruing to you or any other person under this contract are exempt from the claims of creditors or legal process to the fullest extent permitted by law." TIAA/CREF payout annuity contract, paras. 10 and 15. The debtors claim the pension fund and the income therefrom as exempt under 11 U.S.C. §§ 522(d)(10) and argue that they are not property of the estate under 11 U.S.C. § 541(c)(2).

The debtors concede that the IRS is fully secured for $1,009.53 claimed for taxes owed by Mrs. Lyons. (Her interest in the equity in her residence (after a first deed of trust) is $3,091.40 and she has a $1,500 interest in $3,000 worth of jointly owned personal property.) However, they object to the secured claim of the IRS as to Mr. Lyons on the basis that the claim is not fully secured. First, they insist that the secured claim against Mr. Lyons is secured only to the extent of Mr. Lyons' equity portion of the real property in the amount of $3,091.40. Second, they argue that Mr. Lyons' retirement contracts are not property of the estate and thus can not be security for the IRS' tax lien.

■ The IRS contends that Mr. Lyons' equity portion of the real property is $3,091.40 and that the debtor has an interest in jointly owned personal property, not including the retirement fund, in the amount of $3,000.00. The IRS further contends that its tax lien attaches to all the debtors' personal property, even if a portion thereof is claimed as exempt by the debtors. Therefore, at a minimum, the IRS contends it is secured to the extent of $6,091.40. But Mr. Lyons owns only a joint tenant interest in the personal property and upon a foreclosure sale in enforcement of the tax liens securing his tax liabilities, only one-half of the proceeds would be paid to the IRS. Thus, only $1,500 of the personal property is secured by the IRS and its minimum allowed secured claim is $4,591.40.

The IRS has conceded that the *corpus* of the pension fund is not property of the estate and that its lien therefore does not attach to those funds. Nevertheless, the IRS contends that "the United States has a secured claim with respect to the amount of the income stream because it has filed tax liens in this case." According to the government's brief, "the United States is not attempting to include the principal in the estate but only the cash flow." Although not clearly enunciated, the court interprets the government's argument to be that the IRS has a secured claim on Mr. Lyons retirement fund to the extent of the "present value" of the debtor's future TIAA/CREF retirement benefits.[3] No evidence has been presented regarding the present value of the retirement benefits. If the court determines that the present value of the future retirement benefits is property of the estate, the court would hold a valuation hearing to determine such value.[4]

## DISCUSSION

■ Under 11 U.S.C. § 506(a), the claim of the IRS is a secured claim only if the claim is secured by a lien on "property in which the estate has an interest", and only "to the extent of the value of such creditor's interest in the estate's interest in such property." For purposes of ascertaining its secured status, the estate property to which the lien attaches is determined as of the date of the filing of the petition, *In re Riley*, 88 B.R. 906, 912 (Bankr.W.D.Wis. 1987); *In re Driscoll*, 57 B.R. 322, 327 (Bankr.W.D.Wis.1986); *In re Frost*, 19 B.R. 804, 808 (Bankr.D.Kan.1982), *rev'd on other grounds*, 47 B.R. 961 (D.Kan.1985), and the property is valued as of the effective date of the plan, *Frost*, 19 B.R. at 808. To determine the IRS' secured status, it is necessary to determine if the IRS' claim is secured by a lien on property of the estate.

The parties agree that the claim of the IRS is secured to the extent of Mr. Lyons'

share of the equity in the real property in the amount of $3,091.40. Thus, the court must decide (1) whether the claim is secured by a lien on the debtors' household goods and personal effects and (2) whether the claim is secured by a lien on the present value of the future income stream to be derived from the retirement fund.

### I

*Household goods/personal effects*

■ In general, the federal tax lien attaches to "all property and rights to property, whether real or personal, belonging to" the taxpayer. 26 U.S.C. § 6321. The lien imposed by § 6321 arises when an assessment is made and continues until either the taxpayer's liability is satisfied or the statute of limitations on collection expires. 26 U.S.C. § 6322. The lien attaches to the taxpayers property and rights to property as of the moment of assessment and, once filed, attaches to any after-acquired property. *Glass City Bank v. United States*, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945). The IRS's lien initially attached to the debtor's household goods and personal effects on the date of assessment or the date they were obtained by the debtors.

Pursuant to § 506(a) of the Bankruptcy Code, the secured status of the IRS is determined as of the petition date. Therefore, the claim of the IRS is secured to the extent of the value of the debtor's household goods and personal effects on the petition date, assuming that such property constitutes estate property.

The debtors have claimed that the entire fair market value of their household goods and personal effects have been exempted from property of the estate pursuant to 11 U.S.C. § 522(d)(3) and, by implication, that the IRS' claim cannot be secured by exempt property. By contrast, the government argues that under § 522(c), even if all or a portion of the debtors' personal property falls within any of the exemptions

---

**3.** The debtor's future income stream rights would include death benefits because the debtor has the right to designate the beneficiary and to change that designation.

**4.** The debtors' schedules valued the retirement accounts at $18,681.42. The court will assume this is the value if no other evidence is presented.

under § 522(d), the IRS' lien still attaches to all property of the debtor because its claim is based upon a filed tax lien.

■ It is well established that exempt property is not protected from the enforcement of valid liens. Section 522(c)(2) adopts the longstanding rule that the security of a creditor is preserved despite the claim of exemption by the debtor. *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886); H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6316; 3 *Collier on Bankruptcy* para. 522.27 (15th ed. 1992). If the lien is subject to one of the trustee's or debtor's avoiding powers under the Code, however, the exempt property will be protected from the operation of the lien. 3 *Collier on Bankruptcy* para. 522.27 (15th ed. 1992). That is not the case here, however, because the IRS' notice of federal tax lien was filed before bankruptcy and thus is valid against a bona fide purchaser. 11 U.S.C. § 545(2). Thus, the IRS's lien reaches the $1,500 interest of Mr. Lyons in the personal property and the $1,500 interest of Mrs. Lyons in the personal property.

■ Although the debtor has not advanced the argument, the court notes that several cases have addressed the issue of whether 26 U.S.C. § 6334, which exempts certain property from IRS levy, also prevents the federal tax lien from attaching to property exempt from levy. Section 6334(a) exempts from levy such items of wearing apparel as are necessary for the taxpayer or members of his family, as well as household goods up to $1,500.00 in value. In the instant case, $1,500.00 of the debtors' household goods plus an undetermined portion of their $1,000.00 worth of personal effects is exempt from IRS levy pursuant to § 6334. 26 U.S.C. § 6334(a) and (b). Debtors in several cases have argued, based upon § 6334, that property exempted from levy is similarly excluded from the scope of the lien itself. The courts have uniformly held, however, that

Congress did not intend § 6334's exemption from summary collection proceedings to frustrate the IRS' status, arising under § 6221, as a secured creditor. *United States v. Barbier,* 896 F.2d 377 (9th Cir. 1990); *United States v. Stowe,* 121 B.R. 549 (N.D.Ind.1990); *In re Beard,* 112 B.R. 951 (Bankr.N.D.Ind.1990). The court concludes therefore that the IRS' lien extends to the entire $3,000.00 value of the debtors' household goods and personal effects.

## II

### *TIAA/CREF Retirement Plan*

In order for the IRS' claim to be considered a secured claim under § 506(a), the claim must be secured by a lien on property of the estate. Therefore, the court must determine whether the debtor's retirement plan (the corpus or income) constitutes property of the estate.

The Bankruptcy Code provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541(c)(1) provides that restrictions on transfer will generally be inoperative to prevent inclusion of property in the estate. Section 541(c)(2), however, provides that a restriction on the transfer of a beneficial interest in a trust enforceable under applicable nonbankruptcy law is enforceable in bankruptcy. Therefore, property interests of the debtor subject to such enforceable transfer restrictions are not estate property. The estate property definition of § 541 is adopted for chapter 13 cases by 11 U.S.C. § 1306(a).[5]

In *Patterson v. Shumate,* 504 U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (June 15, 1992), the Supreme Court held that § 541(c)(2)'s reference to "applicable nonbankruptcy law" encompasses *any* relevant nonbankruptcy law, including federal law, and therefore, a chapter 7 debtor's interest in an ERISA-qualified plan was excluded from the bankruptcy estate under

---

5. For purposes of chapter 13 proceedings, § 1306(a) draws into the definition of estate property after-acquired property of the debtor that would qualify under § 541 as estate property. *See McLean v. Central States, S. & S. Areas Pen. Fund,* 762 F.2d 1204 (4th Cir.1985).

§ 541(c)(2). The parties agree that the subject pension plans were organized in New York and that New York is thus the applicable state law for purposes of § 541(c)(2).

But as will be seen, New York decisions themselves recognize that state law spendthrift provisions are ineffective against a Federal tax lien made effective by Federal law against a spendthrift trust. Thus, the debtor bears a two-fold burden: that of first showing that under New York law the pensions' provisions immunizing the pensions from the reach of ordinary creditors are effective and that of next showing that such provisions are effective under Federal law against a Federal tax lien. As discussed in part A below, the debtor has met the first burden. The debtor has not met the second burden, having pointed to no Federal law that renders the tax lien ineffective against the debtor's rights under the pension.[6] Under *Patterson v. Shumate*, it is not only state spendthrift trust law that is the "applicable nonbankruptcy law" for purposes of § 541(c)(2): Federal tax lien law is also an applicable nonbankruptcy law as well.

In *Patterson v. Shumate* Federal ERISA provisions were held to be a source of "applicable nonbankruptcy law" that restricted the pensions there involved from the reach of creditors and hence from the estate. Here, in contrast, the court draws from Federal tax lien law as a source of "applicable nonbankruptcy law" that overrides any state law restriction on the IRS' reaching the debtor's rights. To the extent the IRS can reach the debtor's rights, they are property of the estate under § 541.

This result is compelled not only by the plain language of § 541(c)(2) but by policy considerations as well. Outside bankruptcy, the IRS would have an enforceable lien against the debtor's vested right to receive a future stream of pension income despite spendthrift provisions in the pension plans. There is no evidence that in enacting § 541(c)(2) Congress intended the intervention of bankruptcy to alter the IRS's powers as a tax creditor.

### A. Effectiveness of Spendthrift Provisions Under New York Law in General

The debtor has carried his burden of showing that these pensions are restricted against ordinary creditors such that § 541(c)(2) would bar their being property of the estate for the benefit of ordinary creditors.

Mr. Lyons' employer established the retirement plan and contributed to its cost, in order to provide for his maintenance and support during his retirement, while also protecting him against his own improvidence by prohibiting the use of the plan corpus or income prior to his retirement. The TIAA/CREF deferred annuity contracts contain anti-assignment and anti-attachment provisions designed to protect the corpus *and* the income of the trust against claims by his creditors. Similarly, the four payout annuity contracts contain the same anti-assignment, anti-attachment provisions that are contained in the deferred annuity contracts.

In recent years, a number of courts have considered the issue of whether TIAA/CREF retirement plans constitute spendthrift trusts under New York law. Virtually all of these courts have determined that TIAA/CREF retirement plans are "spendthrift trusts" under New York law and thus were excluded from the debtor's estate pursuant to 11 U.S.C. § 541(c)(2). *Morter v. Farm Credit Services*, 937 F.2d 354 (7th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 2991, 120 L.Ed.2d 868 (June 22, 1992); *In re Baxter*, 135 B.R. 353 (Bankr.E.D.Ark.1992); *In re Montgomery*, 104 B.R. 112 (Bankr.N.D.Iowa 1989); *In re*

---

**6.** The debtor has not suggested that the debtor's rights under the pensions are exempt from the reach of a tax lien by virtue of Federal ERISA provisions such as were involved in *Patterson v. Shumate.* I do not preclude the debtor from raising that issue, however. I simply assume for purposes of the balance of this decision that these were not ERISA-qualified pensions unless the debtor steps forward and shows that they were. *See In re Harline*, 950 F.2d 669, 676 (10th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 2991, 120 L.Ed.2d 869 (June 22, 1992); *In re Baxter*, 135 B.R. 353 (Bankr.E.D.Ark.1992) (suggesting but not outright stating that the TIAA–CREF funds there involved were protected by ERISA). The extent to which ERISA provisions (or pre-ERISA provisions in light of the 1972 origin of Mr. Lyons' pensions) block a Federal tax lien has not been addressed either.

*Braden,* 69 B.R. 93 (Bankr.E.D.Mich.1987). In addition, two New York state courts have held that TIAA/CREF retirement plans have all the characteristics of a spendthrift trust necessary to allow the plan to be excluded under § 541(c)(2). *See Matter of Aurora G. v. Harold Aaron G.,* 98 Misc.2d 695, 414 N.Y.S.2d 632 (1979); *Alexandre v. Chase Manhattan Bank,* 61 A.D.2d 537, 403 N.Y.S.2d 21 (1978).

In the instant case, the IRS contends that under New York law the debtor's right to future payments under the TIAA/CREF pension plan is a property interest separate and apart from the undistributed corpus of the pension plan itself, and that the debtor's unqualified right to receive future periodic payments remains property of the estate even if the corpus of the pension plan is excluded from the bankruptcy estate by virtue of § 541(c)(2). I disagree that ordinary creditors could reach the future income stream. The anti-assignment, anti-attachment provisions of the debtor's retirement plans apply to both the corpus of the trusts, as well as the income therefrom. Therefore, even though the debtor has a vested property right to future TIAA/CREF payments, New York law puts Mr. Lyons' retirement benefits beyond the reach of ordinary creditors. Ordinary creditors cannot reach these payments until they are actually received by the beneficiary.[7]

### B. Ineffectiveness of the Restrictions Against Federal Tax Lien

Outside bankruptcy, a federal tax lien may attach to a taxpayer's vested right, under a trust or contract, to receive periodic payments or distributions of property then due or that will become due in the future. *In re Robinson,* 39 B.R. 47 (Bankr.E.D.Va.1984) (lien attaches to present value of future retirement plan payments). The courts of New York have long recognized that spendthrift trusts, although effective against ordinary creditors, are ineffective against Federal tax liens. *In re Rosenberg's Will,* 269 N.Y. 247, 199 N.E. 206 (1935), *cert. denied,* 298 U.S. 669, 56 S.Ct. 834, 80 L.Ed. 1392 (1936). *Accord, Leuschner v. First Western Bank and Trust Co.,* 261 F.2d 705, 707–708 nn. 3–5 (9th Cir.1958). The debtors point to no provision of Federal law that would exempt the debtor's pension rights from the Federal tax lien. Thus, the pension plans' provisions are not, within the language of § 541(c)(2), "enforceable under applicable nonbankruptcy law" with respect to the IRS. Under § 541(c)(1) the debtor's pension rights thus remain property of the estate and under § 506(a) the IRS has an allowed claim against the pension rights to the extent of their value. As in *Robinson,* 39 B.R. at 49, that value is fixed at the present value of the future stream of payments to be received.

---

7. Some courts have concluded that, because of the broader definition of property in chapter 13 cases, the spendthrift trust exclusion does not prevent qualified plan benefits from becoming property of the chapter 13 estate, even if the plans qualify as spendthrift trusts. *See* 60A Am.Jur.2d *Pensions and Retirement Funds* § 477 (1988). Other courts take the view that in chapter 13 cases, just as in chapter 7 cases, the exclusion excludes from a bankruptcy estate interests in pension plans that qualify as spendthrift trusts. I need not resolve this question, however, since the determination of secured status under § 506(a) is made as of the date of the filing of the petition and, as of that date, neither the corpus nor the future income from the debtor's retirement plan were property of the estate.