UNITED STATES INTERNAL
REVENUE SERVICE,
Creditor–Appellee,

v.

Donald SNYDER, Debtor–Appellant.

No. 02–15618.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 2003.

Filed Sept. 15, 2003.

Michael E. Melone, Internal Revenue Service, David L. Denier, Office of the United States Attorney, San Francisco, CA, Thomas J. Clark, USDOJ, Tax Division, Robert J. Branman, USDOJ, Tax Division, Washington, DC for the creditor-appellee.

Robert N. Kolb, Antioch, CA, for the debtor-appellant.

Before: HAWKINS and W. FLETCHER, Circuit Judges, and KING,* Senior District Judge.

## OPINION

WILLIAM A. FLETCHER, Circuit Judge.

The question in this case is whether an IRS claim for delinquent taxes secured outside of bankruptcy by a lien on a debtor's interest in an ERISA-qualified pension plan is secured in bankruptcy "by a lien on property in which the bankruptcy estate has an interest" under 11 U.S.C. § 506(a). This question has divided the courts that have considered it. We hold that such a claim is not secured within the meaning of § 506(a) because a debtor's interest in an ERISA-qualified plan is excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2).

### I. Background

Debtor–Appellant Donald Snyder is a vested participant in an ERISA-qualified pension plan. *See* Employment Retirement Income Security Act of 1974, 26 U.S.C. § 401 et seq., 29 U.S.C. § 1001 et seq. In accordance with the requirements set forth in 26 U.S.C. § 401(a)(13)(A) and 29 U.S.C. § 1056(d)(1), the pension plan contains an anti-alienation clause. It provides:

> Benefits payable under this Plan shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, execution or levy of any kind, either voluntary or involuntary, prior to actually being received by the person entitled to the benefit under the Plan.

Snyder's pension—that is, his interest in the plan—currently has a balance of about $200,000, but it is not yet in pay-out status. Snyder (or his surviving spouse or designated beneficiary) will begin receiving ben-

* The Honorable Samuel P. King, Senior District Judge for the District Court of Hawaii, sitting by designation.

efit payments under the plan only upon: (1) Snyder's normal retirement at age 60; (2) his early retirement at age 55 through 59; (3) his total disability; or (4) his death. Snyder is an able-bodied 49–year–old.

Snyder accrued unpaid tax liabilities in 1983–1986, 1989–1995, and 1997. The IRS has made assessments and has duly recorded notices of federal tax liens for the taxes due in each of those years, except 1997. Federal tax liens have therefore attached by operation of law to Snyder's interest in his pension plan. *See* 26 U.S.C. §§ 6321, 6322. In December 1998, Snyder filed a Chapter 13 bankruptcy petition listing the IRS as an unsecured creditor in the amount of $158,228. The IRS filed a proof of claim in roughly that amount, but claimed $145,664 as secured by virtue of its liens on Snyder's interest in the plan.

Snyder objected to the secured portion of the IRS's claim. He argued that his interest in the plan was excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2), and that the IRS liens on that interest therefore could not secure the IRS's claim in bankruptcy. The bankruptcy court overruled Snyder's objection and allowed the IRS's claim as secured. The district court affirmed. Both courts held that Snyder's interest in the plan became property of the bankruptcy estate for the limited purpose of securing the IRS's claim. Snyder timely appealed.

■ We review de novo the district court's decision on appeal from a bankruptcy court. *Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1233 (9th Cir. 2002). We apply the same standard of review applied by the district court, reviewing the bankruptcy court's legal conclusions de novo and its factual determinations for clear error. *Neilson v. Chang (In re First T.D. & Inv., Inc.)*, 253 F.3d 520, 526 (9th Cir.2001). This case presents a pure question of law.

## II. Discussion

Pursuant to 11 U.S.C. § 541(a)(1), the property of a bankruptcy estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case," "[e]xcept as provided in subsections (b) and (c)(2)." 11 U.S.C. § 541(a)(1). Subsection (c)(2) provides that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." *Id.* § 541(c)(2). In *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court was asked to decide whether "applicable nonbankruptcy law" includes federal as well as state law. The Court held that federal law, including ERISA, was included, and therefore that the anti-alienation clause required for ERISA qualification constitutes a restriction on transfer enforceable under "applicable nonbankruptcy law" within the meaning of § 541(c)(2). *Id.* at 759–60, 112 S.Ct. 2242; *see* 29 U.S.C. § 1056(d)(1) ("Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."). Accordingly, the Court held that a debtor's interest in an ERISA-qualified plan is excluded from the property of the bankruptcy estate. 504 U.S. at 765, 112 S.Ct. 2242.

■ The IRS argues that despite the anti-alienation clause, Snyder's interest in his ERISA-qualified plan should be treated as property of the bankruptcy estate, though only for the limited purpose of securing the IRS's claim. Outside of bankruptcy, the IRS stands in a different position from ordinary creditors in that the anti-alienation provisions in ERISA-qualified pension plans are not enforceable against it. *See, e.g., McIntyre v. United States (In re McIntyre)*, 222 F.3d 655, 660 (9th Cir.2000); *United States v. Sawaf*, 74

F.3d 119, 123–25 (6th Cir.1996); *Shanbaum v. United States,* 32 F.3d 180, 183 (5th Cir.1994); *Anderson v. United States (In re Anderson),* 149 B.R. 591, 595 (9th Cir.BAP1992). ERISA expressly provides that it "shall [not] be construed to alter, amend, modify, invalidate, impair, or supercede any law of the United States," 29 U.S.C. § 1144(d), including federal tax law. Section 6321 of the Internal Revenue Code provides that the United States shall have a lien "upon *all* property and rights to property, whether real or personal," belonging to any person liable to pay any tax who neglects or refuses to do the same after demand, 26 U.S.C. § 6321 (emphasis added); and § 6331 authorizes the IRS to levy upon *all* property or rights to property of such person in order to execute the lien, *id.* § 6331(a).

 The IRS argues that because the plan's anti-alienation clause is not "enforceable under applicable nonbankruptcy law" against it, § 541(c)(2) does not exclude Snyder's interest in the plan from the property of the bankruptcy estate insofar as it concerns the IRS. There are two possible results from adopting the IRS's construction of 11 U.S.C. § 541 and treating its claim as secured in bankruptcy. The first is that if Snyder's bankruptcy plan is confirmed by the bankruptcy court, Snyder would have to make full payment of the IRS's secured claim during the life of the bankruptcy plan. *See* 11 U.S.C. § 1325(a)(5)(B)(ii) (stating that a plan shall be confirmed if "with respect to each allowed secured claim ... the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim"). In that event, the IRS would get in bankruptcy a payment for which it would otherwise have had to wait. The wait would otherwise have been required because the IRS cannot, outside of bankruptcy, enforce its liens on Snyder's interest in his ERISA plan until the

plan enters pay-out status. Snyder has no right to demand payment from the plan trustee until that time, and it is a familiar maxim that the IRS merely steps into the shoes of the taxpayer and does not acquire any greater rights to property than the taxpayer himself enjoys. *See United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 725, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985).

 The second, and more likely, result of treating the IRS's claim as secured in bankruptcy is that confirmation of Snyder's bankruptcy plan would be defeated. If this happens, the IRS could escape from having some or all of the non-lien debt wiped out in bankruptcy. The bankruptcy plan would likely be defeated because of the difficulty of fully paying the IRS's $145,664 claim over the life of the plan. *See* 11 U.S.C. § 1325(a)(6) (stating that a plan shall be confirmed *if* "the debtor will be able to make all payments under the plan and to comply with the plan"). Like Snyder, the bankruptcy trustee cannot gain access to the collateral securing the IRS's claim—that is, to Snyder's interest in his ERISA plan—until the plan enters pay-out status. *See Magill v. State Employees Retirement Sys. (In re Lyons),* 957 F.2d 444, 445 (7th Cir.1992) ("The majority of lower courts that have considered whether a trustee can compel the turnover of funds where a debtor has no present right to the funds have prohibited the turnover because the trustee's claim to estate property is no greater than the debtor's claim at the time of filing. We agree with this line of reasoning." (citations omitted)); I.R.S. Litig. Bulletin No. 361, 1990 WL 1086173 (Oct.1990) ("In our opinion, bankruptcy, per se, does not accelerate a right to cash payment. In other words, the bankruptcy trustee steps into the shoes of the debtor; if the debtor was not entitled to a cash payment, neither is

the trustee."). It is unlikely that Snyder has sufficient income or other assets which the bankruptcy trustee could use to pay the IRS's secured claim. *See* Michael A. Urban, *Revisiting the Scope and Implications of Patterson v. Shumate in Light of In re Lyons,* 3 Am. Bankr.Inst. L.Rev. 379, 401 (1995) (explaining that, if we were to adopt the IRS's approach in this case, Chapter 13 debtors, "in order to get a plan confirmed, may find themselves in the unenviable position of having to fully pay the IRS's secured claim without access to the asset securing the claim since such monies are locked up in the debtor's pension plan").

During the past decade, the IRS has taken inconsistent positions on the question before us. In *In re Lyons,* 148 B.R. 88 (Bankr.D.C.1992), a bankruptcy court held that an IRS claim secured by a federal tax lien on the debtor's pension was secured in bankruptcy, even though that pension otherwise qualified for exclusion from the bankruptcy estate pursuant to § 541(c)(2). In 1996, in reaction to *Lyons,* the IRS issued a litigation bulletin, in which it took the opposite position from the position it takes today. It explained:

> The *Lyons* approach is not consistent with section 506(a) of the Bankruptcy Code. Under section 506(a), a creditor's rights in property are dependent on the bankruptcy estate's interest in property; the determination of the estate's interest is separate from and must precede the determination of the creditor's interest. If the estate has no interest in the property at issue, as was the case in both the *Patterson* and *Lyons* situations, it is not possible for the claim of any creditor, including the [IRS], to be secured by that property under section 506(a). Therefore, *Lyons* is inconsistent with the statute, in that the *Lyons* analysis essentially gives one particular creditor (the [IRS]) an interest in property where the estate has no interest in that

property. Accordingly, *Lyons* [is] viewed as legally unsound.

I.R.S. Litig. Bulletin No. 431, 1996 WL 33105615(Aug.1996).

In 1998, in *In re Persky,* 1998 WL 695311(Oct. 5, 1998), the IRS in litigation took the same position it took in the litigation bulletin in 1996. It was to the IRS's advantage in *Persky* to increase the amount of the Perskys' total unsecured debt so as to defeat their eligibility for Chapter 13 relief under 11 U.S.C. § 109(e). The IRS therefore argued that its lien on the debtors' spendthrift trust was not a lien on property in which the estate had an interest under § 541(c)(2), and thus did not operate to secure the IRS's claim in bankruptcy pursuant to § 506(a). *See also* Amy Madigan, Note, *Using Unfiled Dischargeable Tax Liens to Attach to ERISA–Qualified Pension Plan Interests After Patterson v. Shumate,* 14 Bankr.Dev. J. 461, 490–93 (1998) (describing an unpublished case in which the IRS argued that an ERISA-qualified pension plan was excluded from the bankruptcy estate pursuant to § 541(c)(2), where exclusion was to the IRS's advantage because it would permit the attachment of an unfiled dischargeable tax lien on the debtor's pension plan).

Two years after *Persky,* the IRS took the opposite position. In April 2000, the Assistant Chief Counsel for the IRS wrote:

> Not following *Lyons* leads to results that are straightforward: ERISA-qualified plans and similar interests are excluded from the bankruptcy estate with respect to the [IRS] and all other creditors. Because they are not property of the estate, they cannot be used in determining the value of the [IRS's] secured claim. On the other hand, to the extent that the [IRS] has a lien that survives the bankruptcy, it can pursue collection outside bankruptcy. However, given the statutory framework of sections 541

and 506 and the Supreme Court's reasoning in *Patterson* ..., upon reconsideration we now believe that the holding in *Lyons* is correct. The wording of each section, on its face, supports the court's reasoning. In addition, there is nothing in the legislative history that would call for a different result.

I.R.S. Chief Couns. Advis. 200041029, 2000 WL 33120271 (Apr. 11, 2000).

Courts have split on the question presented in this case. Cases agreeing with Snyder's position include *In re Wingfield*, 284 B.R. 787, 790 (E.D.Va.2002) ("The debtor's interest in his ... plan is not property of the estate for the purposes of establishing the IRS's secured claim."); *In re Persky*, 1998 WL 695311, at *5 ("[T]he IRS has a lien on Mr. Persky's interest in the Trust but for purposes of bankruptcy, the IRS does not have a secured claim against the estate because the Trust is not property of the estate."); *In re Keyes*, 255 B.R. 819, 822 (Bankr.E.D.Va.2000) ("The Supreme Court's ruling in *Patterson* is clear that ERISA qualified plans do not become part of the bankruptcy estate. Therefore, the IRS's claim cannot be treated as secured because it does not have a 'lien on property in which the estate has an interest,' as required by 506(a)."); and *In re Wilson*, 206 B.R. 808, 810 (Bankr. W.D.N.C.1996) ("[A] federal retirement plan is clearly not property of the estate under section 541(c)(2) of the Bankruptcy Code and under the tenants [sic] of *Patterson v. Shumate*. The IRS does have a lien on that property, but as the asset itself never became property of this estate, the IRS does not hold a secured claim *against this estate*." (citation omitted)). *See also In re Anderson*, 149 B.R. 591, 594 (9th Cir. B.A.P. 1992) ("[T]he debtor's pension plan is not property of the estate in accordance with § 541(c)(2) of the Bankruptcy Code.").

Cases agreeing with the IRS's current position include *In re Berry*, 268 B.R. 819, 824 (Bankr.E.D.Tenn.2001) ("Because of the far-reaching collection power granted [to the IRS] ... by § 6321, the anti-assignment and anti-alienation provisions of the [Trust] are not 'restrictions enforceable under applicable nonbankruptcy law.' "); *Jones v. IRS (In re Jones)*, 206 B.R. 614, 621 (Bankr.D.D.C.1997) ("[T]he [pension] would in effect have a split personality by remaining property of the estate for purposes of federal tax claims even though it is not property of the estate for purposes of other creditors' claims."); *In re Lyons*, 148 B.R. at 94 ("Under § 541(c)(1) the debtor's pension rights ... remain property of the estate and under § 506(a) the IRS has an allowed claim against the pension rights to the extent of their value."); and *In re Perkins*, 134 B.R. 408, 411 (Bankr.E.D.Cal.1991) ("[A]pplicable nonbankruptcy law (being the law applied for attachment and levy of federal tax liens) does not 'restrict the transfer of a beneficial interest of the debtor in trust' and the [debtor's] technical 'property of the estate' argument loses its foundational premise."). In *IRS v. McIver (In re McIver)*, 255 B.R. 281, 285 (D.Md.2000), the district court agreed with the IRS's position. On remand, however, the bankruptcy court respectfully disagreed:

> [H]ad the learned District Court judge had the benefit of the *Keyes* decision, decided subsequently to the District Court's Memorandum Opinion ..., the District Court may have reconsidered its position. If this court were writing this decision on a clean slate, it would adhere to the position that 11 U.S.C. § 506(a) means what it says, and that a secured claim arises from a lien upon property upon which the estate has an interest.

*In re McIver*, 262 B.R. 362, 365 (Bankr. D.Md.2001).

We agree with the position taken in the first group of cases described above. That is, we agree with the position the IRS took in its 1996 litigation bulletin and in *Persky*, and disagree with the position it took in 2000.

Today, the IRS argues that the question of enforceability under applicable nonbankruptcy law—and, derivatively, exclusion from the bankruptcy estate—must be analyzed by looking at the specific creditor seeking secured status and asking whether the trust's anti-alienation clause would be enforceable against that creditor in particular. We believe that this argument misconceives the character of §§ 506(a) and 541. Section 506(a) provides that in order for a claim to be secured in bankruptcy, it must be secured by a lien on "property in which the estate has an interest." 11 U.S.C. § 506(a) ("An allowed claim of a creditor secured by a lien on property *in which the estate has an interest* ... is a secured claim to the extent of the value of such creditor's interest in the *estate's interest* in such property ...." (emphasis added)).

Section 541 is concerned with describing what property shall be included in a bankruptcy estate, not with describing the treatment particular creditors shall receive in the course of bankruptcy proceedings. "Section 541 ... governs the creation and content of the bankruptcy estate." *Reed v. Drummond (In re Reed)*, 985 F.2d 1026, 1027 (9th Cir.1993). It states that the property of the bankruptcy estate includes "all legal interest of the debtor in property as of the commencement of the case," except as provided in subsections (b) and (c)(2). 11 U.S.C. § 541(a)(1). Subsection (c)(1) provides that "[e]xcept as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1) ... notwithstanding any provision ... that restricts or conditions transfer of such interest by the debtor." *Id.* § 541(c)(1). The Historical and Statutory Notes to the 1978 Act describe subsection (c)(1) as operating to "invalidate[ ] restrictions on the transfer of property of the debtor, *in order that all of the interests of the debtor in property will become property of the estate.*" (Emphasis added.)

Subsection (2) carves out an exception to § 541(a)(1) and (c)(1). It provides that trust anti-alienation provisions otherwise enforceable under nonbankruptcy law will operate in a bankruptcy case to prevent the transfer of the debtor's interest in the trust to the bankruptcy estate. The fact that the clause may be unenforceable *against the IRS* is neither here nor there. *See In re Mueller*, 256 B.R. 445, 455 n. 22 (Bankr.D.Md.2000) ("[W]hether or not a retirement plan is subject to an IRS levy or tax lien would seem to have no effect upon a pension as property of the bankruptcy estate."). The question is whether the anti-alienation clause prevents the transfer of the debtor's interest in the pension *to the bankruptcy estate,* not to the IRS, or to any other specific creditor. *See Anderson v. Raine (In re Moore)*, 907 F.2d 1476, 1480 (4th Cir.1990) ("Under the plain and simple language of Section 541(c)(2), if the ERISA anti-alienation provisions are enforceable against general creditors, they are enforceable *against the bankruptcy trustee.*" (emphasis added) (internal quotation marks omitted)); Madigan, *supra* at 465–66 ("The underlying premise of § 541(c)(2) is that the transfer of the debtor's interest *into the bankruptcy estate* violates the anti-alienation provision under applicable nonbankruptcy law." (emphasis added)).

The parties do not dispute that the anti-alienation clause in Snyder's ERISA plan is enforceable under nonbankruptcy law against everyone except the IRS. This is enough to prevent the transfer of Snyder's

interest in the plan to the bankruptcy estate. *See Arkison v. UPS Thrift Plan (In re Rueter)*, 11 F.3d 850, 852 (9th Cir.1993) (holding that because "[b]oth the plan in *Shumate* and the one at issue[were] ERISA-qualified plans [ ] subject to [an enforceable] statutory anti-alienation provision," the Plan "[met] the requirement laid down by the Supreme Court in *Shumate* for exclusion under § 541(c)(2)"). Because Snyder's interest in the plan is not property of the bankruptcy estate, it cannot be used to secure the IRS's claim under § 506(a).

 Although exclusion of Snyder's interest in the plan from the bankruptcy estate precludes the IRS from attaining secured status in the bankruptcy proceeding, the IRS's liens against Snyder's interest are not extinguished or otherwise affected. The liens continue to exist, but outside of bankruptcy. *See In re Taylor,* 289 B.R. 379, 383–84 (Bankr.N.D.Ind.2003) ("[T]he fact that a creditor does not hold a lien upon property of the estate does not mean there is no underlying right to payment; only that the claim is not 'secured' in the bankruptcy sense of the word."); *see also Isom v. IRS (In re Isom),* 901 F.2d 744, 745–46 (9th Cir.1990) (holding that a debtor's property remains liable, after bankruptcy, for a debt secured by a valid tax lien). The IRS can seek relief from the automatic stay in order to enforce its liens during the bankruptcy, or can wait until the conclusion of the bankruptcy proceeding. *See* Jack E. Karns, *Can the Internal Revenue Service Levy and Collect Against ERISA Qualified Pension Plan Benefits in Bankruptcy Proceedings?,* 27 Wake Forest L.Rev. 657, 670 (1992); *see also In re Wilson,* 206 B.R. at 810 ("[S]ince the Debtor does not propose to pay this debt, and as it is not a secured claim in this case, the IRS should be granted relief from stay to permit it to exercise any rights it has against the retirement plan under non-bankruptcy law."). Or, if the liens are not enforceable until sometime after the conclusion of the bankruptcy, the IRS will have to wait until then. But the IRS will eventually be able to enforce its liens. Our holding today merely prevents the IRS from using Snyder's bankruptcy to accelerate payment of the liens, or from using the liens to prevent Snyder from confirming a bankruptcy plan that could reduce or eliminate the IRS's non-lien debt.

We REVERSE the decision of the district court and REMAND for further proceedings.