**In re Robert L. PERKINS, and Dorothy D. Perkins, Debtors.**

**Bankruptcy No. 988–01616–13.**

United States Bankruptcy Court,
E.D. California,
Modesto Division.

Nov. 27, 1991.

Dan Nelson, of the Law Office of Max Cline, Stockton, Cal., for debtor.

G. Patrick Jennings, Trial Atty., Tax Div., Washington, D.C., for I.R.S.

ROBERT L. EISEN, Bankruptcy Judge.

## MEMORANDUM DECISION

This matter comes before the court on debtors' objection to proof of claim submitted by the Internal Revenue Service (the "IRS" or "government") and involves the extent to which a federal tax lien is enforceable against a Chapter 13 debtor's interest in a spendthrift trust.

Debtors appeared by and through Dan Nelson, Esq., of the Law Office of Max Cline, Stockton, California. The IRS appeared by and through G. Patrick Jennings, trial attorney, tax division, Washington, D.C.

## FACTS

At the commencement of Robert and Dorothy Perkins' Chapter 13 case, Mr. Perkins was 52 years old and had a vested right to a defined benefit pension provided in connection with some 20 years working as a union plumber. Although fully vested, Mr. Perkins was not, and is not presently, entitled to any rights to the plan payments. Only upon reaching 62 years old will Mr. Perkins then be entitled to receive the vested payments of $574 per month until death. The pension plan contains an ERISA-qualified spendthrift provision prohibiting assignment or alienation of his rights to creditors or third parties.

The IRS filed a timely proof of claim against the Perkins' estate which included a secured claim of $11,304 based upon perfected tax liens filed for taxes, penalties, and interest due on assessments made for the 1983 and 1984 tax years. The IRS maintains that its liens are not only secured by the $5,760 of unencumbered assets of the estate (as asserted by the Perkins) but also by the substantial present value of vested pension rights of Mr. Perkins which, if included, would more than adequately secure the tax lien and would entitle the IRS to the rights and privileges of an oversecured creditor. In support of their position, the government maintains that the spendthrift provisions of the pension plan are ineffective.

The Perkins do not dispute the validity or attachment of the IRS's lien on Mr. Perkins' pension rights but object to the claim contending that it alleges secured status in an amount greater than the $5,760 value of the unencumbered estate property available for satisfaction of the lien. The Perkins argue that the pension rights should not be included in the statutory formula for determining the IRS's secured status under section 506 because the pension qualifies as a spendthrift trust. Alternatively, the Perkins contend that even if properly included in determining secured status under section 506, the value of the pension rights for this proceeding should be determined at zero.

## DISCUSSION

The Perkins' first argument relies on a technical manipulation of two Bankruptcy Code sections (506 and 541) which in tandem are alleged to bar a determination of secured status on the government's tax lien. Section 506 provides that an allowed claim is "secured" only to the extent and value that "the estate has an interest" in the particular property. 11 U.S.C. § 506(a). Section 541 excepts from "property of the estate" beneficial interests of the debtor in a trust which are restricted from transfer by applicable and enforceable nonbankruptcy law. 11 U.S.C. § 541. The Perkins' argue that in view of the fact that Mr. Perkins rights to his pension are restricted from transfer by the spendthrift provision of the plan, Mr. Perkins' pension is not part of the estate and therefore cannot be determined to be "secured" pur-

suant to section 506 because there is no value in which the "estate has an interest."

■ Fatal to the Perkins' analysis is its failure to deal with the special status of a federal tax lien. Even if the ERISA-qualified anti-alienation provision qualified the pension as a spendthrift trust under state law,[1] such qualification would not necessarily impede the IRS's ability to enforce the government's rights. The federal tax lien statute provides upon failure to pay taxes on demand that the tax shall "be a lien ... upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. This language "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720–21, 105 S.Ct. 2919, 2924–25, 86 L.Ed.2d 565 (1985). The government's rights to levy on property subject to a tax lien are extremely broad and limited only by those property interests specifically enumerated by statute—which do not include the type of pension benefit at issue in this case. *See* 26 U.S.C. § 6334. While state law may determine whether the taxpayer has "property" or "rights to property," state law does not affect whether the lien may attach and be levied against a taxpayer's property or rights to property. "The federal statute relates to the taxpayer's rights to property and not to his creditors' rights." *Nat'l Bank of Commerce*, 472 U.S. at 727, 105 S.Ct. at 2928 (1985). Thus, an exempt status under state law binds neither attachment nor levy of a federal tax lien. *See, e.g., United States v. Barbier*, 896 F.2d 377, 378 (9th Cir.1990); *In re Reed*, 127 B.R. 244, 246 (Bankr. D.Haw.1991).

■ Consistent with this premise, the Ninth Circuit has specifically held that while a spendthrift clause may be effective to shield attachment and levy by general creditors against a beneficiary's interest in a trust, such shield is unavailing to attachment and levy of a federal tax lien. *See Leuschner v. First Western Bank and Trust Co.*, 261 F.2d 705 (9th Cir.1958). In addition, Congress has expressly indicated that even where a debtor may choose to exempt rights to a pension under section 522(d)(10)(E)(iii), such exemption does not affect a federal tax lien. *See* 11 U.S.C. § 522(c)(2)(B) (property exempted under section 522 subject to properly filed tax lien). As is clear from the authority cited, applicable nonbankruptcy law (being the law applied for attachment and levy of federal tax liens) does not "restrict the transfer of a beneficial interest of the debtor in trust" and the Perkins' technical "property of the estate" argument loses its foundational premise.

■ Further disposing of the Perkins' argument is the language of section 506, which indicates that the court is to value a secured party's interest according to the "interest of the estate in the property" and not according to whether the property meets the precise definition of "property of the estate" as set forth in section 541. While the phrase "interest of the estate in the property" is not defined by statute, it is evident in this case that even if the property were not deemed "property of the estate," the bankruptcy estate has an interest in the pension which is, at the very least, sufficient to allow attachment and levy on Mr. Perkins' pension rights by the IRS. This interest is, therefore, properly considered in determining the value of the

---

1. In *Daniel v. Security Pacific National Bank (In re Daniel)*, 771 F.2d 1352, 1360 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986), the Ninth Circuit held that the phrase "applicable non-bankruptcy law" in section 541(c)(2) was a narrow reference to state spendthrift law and, specifically, that an IRS or ERISA-qualified spendthrift provision in a pension did not necessarily create a spendthrift exclusion in bankruptcy. In this case, the issue of whether the ERISA-qualified spend-thrift provision in Mr. Perkin's pension plan qualified under applicable *state* law was not extensively litigated by either party and appeared for the first time in the government's post-hearing brief. Although proper resolution of the issue could be determinative of this case, the court declines to determine the issue where no significant factual or legal discussion has been provided and sufficient alternative grounds exist for deciding the controversy.

government's secured claim pursuant to section 506.

Having determined the estate has an interest in Mr. Perkins' pension rights to be considered in making a determination under section 506, the court now turns to the disputed issue of what it is presently worth.

The Perkins have asserted that the present worth is nothing because the pension is valueless until Mr. Perkins reaches the age of 62 and becomes entitled to the payments. The IRS argues that present value should be determined to be a replacement value of approximately $74,000, but is willing to accept a discounted present value calculation submitted by the Perkins valuing the pension at approximately $30,000.

Section 506 provides that "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." The legislative history to section 506 further indicates that "[c]ourts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case." H.R.Rep. 95–595, 95th Cong., 1st Sess. 356 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6312.

Courts addressing the issue of valuation of pensions or a debtor's rights to pensions have not hesitated to assign positive present values notwithstanding that payments are available only upon satisfaction of contingencies. For example, in *In re Robinson*, 39 B.R. 47 (Bankr.E.D.Va.1984), the Chapter 13 debtor filed an objection to claim and complaint to determine the validity of a tax lien asserted by the IRS on debtor's military pension. Debtor argued that the value of the government's lien should be limited to the pension payments which were to be received during the life of his Chapter 13 plan. The court rejected debtor's argument holding that the IRS had "a lien on the debtor's military retirement not measured by the life of the [Chapter 13] plan but rather, to the extent of the present value of that retirement." *Id.* at

49. Similarly, the court in *In re Kelley*, 31 B.R. 786 (Bankr.N.D.Ohio 1983), sustained a creditor's objection to debtor's Chapter 13 plan because debtor failed to include his vested rights to future pension payments in his schedules. The court commented that although the parties had not provided the court with figures representing the present value of the pension it appeared "that debtor's interest was of substantial value."

Although not setting down a formula for determining present value, these cases firmly establish that vested pension rights to future periodic payments for life are to be assigned a present value according to the actuarial value of the stream of payments. Actuarial tables and present value calculations have long been a part of valuation in the business and legal communities, and, consistent with the authority cited above, the court sees no reason why such valuation techniques should not be applied in determining value of Mr. Perkin's rights to property in these bankruptcy proceedings.

In determining that the secured status of the IRS's lien should be measured according to the present value of the stream of pension payments, the court necessarily rejects the IRS's proposed replacement valuation of $74,000. The IRS has, however, indicated its willingness to accept the $30,000 present value determination submitted by the Perkins as an exhibit to their pleadings. Accepting that valuation and taking into consideration the $5,760 already secured by unencumbered property of the estate, it is clear that the IRS's $11,304 lien is comfortably oversecured.

CONCLUSION

Based on the foregoing, the court denies the Perkins' objection to the claimed secured status of the IRS's $11,304 tax lien as set forth in the IRS's proof of claim. Because the proper formula for determining the present value of Mr. Perkins' pension rights was not thoroughly litigated, this determination is without prejudice to the rights of the parties to bring further proceedings to have the present value de-

termined according to formulae demonstrated to the court to be proper.

The foregoing Memorandum Decision constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy. Counsel for the IRS is directed to prepare a proposed order consistent with this decision. The proposed order shall be served on all opposing counsel and be lodged with the court with a proof of such service.