**In re Donald SNYDER, Debtor.**

**Donald Snyder, Debtor/Appellant,**

**v.**

**United States of America, Internal Revenue Service, Creditor/Appellee.**

No. C 01–2501 CW.
Bankruptcy No. 98–71761 NG.

United States District Court,
N.D. California.

March 14, 2002.

Robert N. Kolb, Law Offices of Robert N. Kolb, Antioch, CA, for Debtor.

David L. Denier, U.S. Attorney's Office, Tax Division, San Francisco, CA, Michael E. Melone, Special Assistant U.S. Attorney, San Francisco, CA, for U.S.

## ORDER AFFIRMING DECISION OF BANKRUPTCY COURT

WILKEN, District Judge.

Debtor/Appellant Donald Snyder appeals the bankruptcy court's decision allowing Creditor/Appellee Internal Revenue Service's (IRS) secured claim. This appeal presents the question of whether the bankruptcy court erred in ruling that Snyder's interest in his ERISA[1]—qualified pension plan may be used to secure the IRS's federal income tax claim in the amount of $145,664.48 in Snyder's Chapter 13 bankruptcy case. Having considered all of the papers filed by the parties, the Court AFFIRMS the order of the bankruptcy court.

## BACKGROUND

### I.  Statement of Facts

The facts in this case are not in dispute. (Excerpt of Record, hereinafter "ER," 46–51). At all relevant times, Snyder was a vested participant in the Contra Costa County Electrical Worker's Union Retirement Plan (the Plan). (ER 46–47). The Plan was duly qualified under ERISA's provisions at 26 U.S.C. § 401, *et seq.* (ER 256–57) and 29 U.S.C. § 1001, *et seq.* (ER 256–57). The Plan contained an anti-alienation provision as required by 26 U.S.C. § 401(a)(13) and 29 U.S.C. § 1056(d)(1). (ER 255).

All contributions to the Plan were made by the various employers of the participants and were pooled into one common fund with other participants and thereafter allocated to separate individual accounts for each participant for ERISA-required accounting and reporting purposes. (ER 47–48). The balance of Snyder's allocated individual account as of December 31, 1998 was $180,477. (ER 48).

Plan participants have no right, title or interest in the trust assets or separate individual accounts, except at the time or times and upon the terms and conditions provided in the Plan. (ER 227, 254). Plan benefits are payments to which participants and beneficiaries are or may become entitled under the Plan. (ER 48). The benefits provided by the Plan are:  (1) normal retirement benefit payments payable at age 60;  (2) early retirement at age 55 through 59 in an amount up to one-half the normal retirement benefits;  (3) a lump sum payment in the event of total disability;  or (4) payments to a surviving spouse or designated beneficiary in the event the participant dies before complete distribution of Plan benefits.  (ER 48).  Snyder was forty-four years of age as of December 7, 1998.  (ER 46).

### II.  Procedural History

On December 7, 1998, Snyder filed a Chapter 13 bankruptcy petition and scheduled the IRS as an unsecured creditor in the amount of $158,228, of which $134,363 was scheduled as a general unsecured claim and $24,085 was scheduled as a priority claim. (ER 1–29, 49). In his Schedule B–Personal Property, Snyder listed his interest in the Plan with a balance of $171,443 as of June 30, 1998 and indicated, "ERISA-qualified, cannot be withdrawn."

---

**1.** Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.;* 26 U.S.C. § 401 *et seq.*

(ER 5). Snyder listed the current value of his interest in the Plan as zero. (ER 5, 48). Snyder's Chapter 13 plan was confirmed on January 21, 1999. (ER 30).

On February 28, 1999, the IRS filed a proof of claim in the amount of $158,228.11, of which $145,664.48 was claimed as secured, $11,581.04 was claimed as priority, and $982.59 was claimed as general unsecured. The IRS had duly filed Notices of Federal Tax Liens as set forth in its proof of claim. (ER 31–32, 49).

On April 23, 1999, Snyder objected to the secured portion of the IRS's claim. (ER 33–34). On April 27, 1999, the IRS filed a timely response to Snyder's objection. (ER 35–36).

On November 6, 2000, the bankruptcy court held a hearing on Snyder's objection to the IRS's claim. (ER 125–212). At the conclusion of the hearing, the bankruptcy court held that for purposes of a federal tax lien, Snyder's interest in the ERISA-qualified retirement plan was property of the Chapter 13 estate (ER 209:2–12), that Snyder's objection to the IRS's claim was overruled, and that the IRS's claim was allowed as secured. (ER 209:19–21).

On December 7, 2000, Snyder filed a motion for reconsideration. (ER 83–90). On December 20, 2000, the IRS filed an opposition thereto (ER 91–97), and Snyder replied on January 5, 2001. (ER 98–107). On January 11, 2001, after oral argument, the bankruptcy court reversed itself in part, holding that Snyder's interest in the ERISA-qualified retirement plan was not property of his Chapter 13 estate, but left standing its prior ruling that Snyder's objection was overruled and the IRS's claim must be paid as a secured claim. (ER 317).

On April 30, 2001, the IRS filed a request for order of the court or instructions and conference to resolve the appar-

ent inconsistency between the bankruptcy court's decision on November 6, 2000 and its conclusion on January 11, 2001. (ER 116–24). On April 26, 2001, Snyder filed his response. (ER 108–15). On May 23, 2001, the bankruptcy court entered its Order Allowing Claim holding that for purposes of the IRS's federal tax lien, Snyder's interest in his ERISA-qualified retirement plan was property of his Chapter 13 bankruptcy estate and thus the IRS's claim was allowed as a secured claim. (ER 320–21).

On June 1, 2001, Snyder filed a timely notice of appeal. (ER 322–23).

## JURISDICTION AND STANDARD OF REVIEW

■ A district court has jurisdiction to hear appeals from a bankruptcy court pursuant to 28 U.S.C. § 158(a). The district court reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. Fed. R. Bankr.P. 8013; *In re Lockard,* 884 F.2d 1171, 1174 (9th Cir. 1989). In the instant case, the bankruptcy court's findings of fact are not in dispute, and this Court therefore conducts a *de novo* review.

## DISCUSSION

■ Snyder argues that the bankruptcy court erred in finding that his interest in the Plan could be used to secure the IRS's claim. Specifically, Snyder contends that because his interest 'in the Plan would ordinarily be excluded from the bankruptcy estate and could not be used to secure the claims of other creditors, it should not have a "split personality" by being deemed property of the estate to secure the IRS's claim. Appellant's Opening Brief at 11. The IRS argues that a debtor's interest in a beneficial trust, such as Snyder's interest in the Plan, is property of the estate for purposes of determining the IRS's secured

claim even if that interest would be excluded from the bankruptcy estate with respect to other creditors.

▪ For an allowed claim to be "secured" under the Bankruptcy Code, it must be secured by a lien on property in which the estate has an interest.[2] 11 U.S.C. § 506(a). The bankruptcy estate is comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541(c)(2) provides the following exclusion from the definition of property of the estate: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). In *Patterson v. Shumate,* 504 U.S. 753, 759, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court held that ERISA plans are generally excluded from the property of the bankruptcy estate under § 541(c)(2).

Before *Patterson,* courts treated the phrase "applicable nonbankruptcy law" in § 541(c)(2) as limited to traditional spendthrift trusts under State law. Because § 541(c)(2)'s exclusion did not apply to ERISA, debtors' interests in ERISA plans were deemed to be property of the bankruptcy estate.

In *Patterson,* however, the Supreme Court obliterated this narrow interpretation of the exclusion and held that the phrase "applicable nonbankruptcy law" in § 541(c)(2) "encompasses any relevant nonbankruptcy law, including federal law such as ERISA." *Id.* at 759, 112 S.Ct. 2242. In reaching the conclusion that interests in State spendthrift trusts were not the only interests contemplated by § 541(c)(2), the Court relied on the plain language of the Bankruptcy Code and ERISA. "The natural reading of [§ 541(c)(2) ] entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law. Nothing in § 541 suggests that the phrase 'applicable nonbankruptcy law' refers, as petitioner contends, exclusively to state law." *Id.* at 758, 112 S.Ct. 2242. Next, the Court viewed the plain language of § 206(d)(1) of ERISA: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). The Court noted that this language "clearly imposes a 'restriction on the transfer' of a debtor's 'beneficial interest' in the trust." *Patterson,* 504 U.S. at 759, 112 S.Ct. 2242 (citing also transfer restrictions in 26 U.S.C. § 401(a)(13) and 26 C.F.R. § 1.401(a)–13(b)(1)). Therefore, the Court concluded, "The anti-alienation provision required for ERISA-qualification and contained in the Plan at issue in this case thus constitutes an enforceable transfer restriction for purposes of section 541(c)(2)'s exclusion of property from the

---

**2.** In general, secured creditors receive more favorable treatment in bankruptcy. For example, a secured creditor is entitled to priority payment out of its collateral. 11 U.S.C. § 1123(b)(5). Additionally, a secured creditor may be entitled to "adequate protection" in the form of payments or other relief if the trustee's continued use of the secured creditor's collateral during the pendency of the case threatens the value of the collateral. 11 U.S.C. §§ 361, 363(e); *see also United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Secured creditors may also be entitled to relief from automatic stay to enforce nonbankruptcy rights against their collateral if the requirements of § 362(d) are met. 11 U.S.C. § 362(d). And, absent consent, a plan may not be confirmed if the special requirements of §§ 1129(b)(2)(A), 1225(a)(5) or 1335(a)(5) applicable to secured claims are not satisfied. 11 U.S.C. §§ 1129(b)(2)(A), 1225(a)(5), 1335(a)(5).

bankruptcy estate." *Id.* at 760, 112 S.Ct. 2242. The law is thus settled that an interest in a qualified ERISA plan is not property of the bankruptcy estate for the purposes of securing the claims of ordinary creditors. *Id.*

In cases where the creditor is not the IRS, the Ninth Circuit has consistently decided that the debtor's interest in an ERISA plan was excluded from the property of the bankruptcy estate and was thus unable to secure a claim. *See e.g., In re Rueter,* 11 F.3d 850, 852 (9th Cir.1993); *Pitrat v. Garlikov,* 992 F.2d 224, 225–26 (9th Cir.1993). However, courts are split over the application of § 541(c)(2)'s exclusion in cases where the IRS, not a private creditor, asserts that its claim is secured by the debtor's interest in an ERISA plan. The Ninth Circuit has not decided whether the debtor's interest in an ERISA plan can be deemed property of the debtor's estate for purposes of securing an IRS claim.

Federal tax liens are governed by § 6321 of the Internal Revenue Code (IRC),[3] which provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. "A federal tax lien, however, is not self-executing. Affirmative action by the IRS is required to enforce collection of the unpaid taxes." *United States v. National Bank of Commerce,* 472 U.S. 713, 720, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985).

One of the tools for execution of the lien and collection of the unpaid tax is a levy. "The levy is a provisional remedy" that results in the seizure of assets and is governed by § 6331(a) of the IRC. *Id.* Section 6331 provides: "If any person liable to pay

any tax neglects or refuses to pay the same within ten days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by levy upon all property and rights to property (except such property as is exempt under § 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax." 26 U.S.C. § 6331(a). The only property exempt from the IRS's power of levy is that included in the list of exemptions in § 6334(a). "Notwithstanding any other law of the United States ... no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)." 26 U.S.C. § 6334(c).

Snyder relies on a line of case law that stands for the proposition that a debtor's interest in an ERISA plan does not become property of the estate and therefore cannot serve as property to secure an IRS tax lien. For example, in *In re Wilson,* 206 B.R. 808, 810 (Bankr.W.D.N.C.1996), the court relied on *Patterson* to conclude that an interest in a retirement plan was not property of the estate under § 541(c)(2). The court explained, "The IRS does have a lien on that property, but as the asset itself never became property of this estate, the IRS does not hold a secured claim *against this estate.* Section 506(a) provides that to be a secured claim in the case, the creditor must be secured by a *'lien on property in which the estate has an interest.'* " *Id.* (emphasis in original); *see also In re Persky,* 1998 WL 695311 (E.D.Pa.1998) (same). And, in *In re Keyes,* 255 B.R. 819, 822 (Bankr.E.D.Va. 2000), the court provided, "While it is clear that an asset of the debtor is subject to the IRS lien as provided for by statute, there is simply no statutory authority for granting it a 'split personality' to include it in

---

3. The Internal Revenue Code is contained at     26 U.S.C. §§ 1–9833.

the bankruptcy estate simply for purposes of securing the IRS's lien."

Snyder also relies on the Ninth Circuit Bankruptcy Appellate Panel's (BAP) decision *In re Anderson,* 149 B.R. 591 (9th Cir. BAP 1992), where a Chapter 13 debtor filed a complaint to determine the nature and extent of the IRS's federal tax lien against his property. The BAP held that the debtor's interest in an ERISA plan was not property of his bankruptcy estate pursuant to § 541(c)(2). *Id.* at 593–94 (relying on *Patterson* ). However, the panel also held that the tax lien properly attached to the debtor's interest in an ERISA plan. *Id.* at 595. Snyder is incorrect when he states that *Anderson* dictates that because the Plan is not property of the estate, it cannot secure the IRS's claim. "The [*Anderson* ] opinion is silent on the question of whether the attachment of the federal tax lien to Mr. Anderson's pension gave the IRS a secured claim in his bankruptcy proceeding, in spite of the exclusion of the pension from the estate. As a result, the bankruptcy consequences of the BAP's determination of the nature and extent of the federal tax lien on the debtor's property are unclear."[4]  Michael A. Urban, *Revisiting the Scope and Implications of Patterson v. Shumate in Light of In re Lyons,* 3 Am. Bankr.Inst. L.Rev. 379, 398 (1995). And, as the IRS points out, *Anderson* was decided in a different posture. Unlike Snyder, who objects to the IRS's secured claim, the debtor in *Anderson* filed a complaint to determine the nature and extent of an IRS tax lien against his ERISA plan.

The opposite line of case law stands for the proposition that a debtor's interest in an ERISA plan will be excluded from the bankruptcy estate for the purposes of general creditors, but may be used to secure IRS claims. This approach was utilized by the court in *In re Lyons,* 148 B.R. 88 (Bankr.D.D.C.1992), which concluded that a debtor's interest in a spendthrift trust was property of the Chapter 13 estate to secure an IRS claim even though it would be excluded from the estate for purposes of securing the claims of general creditors. Applying *Patterson,* the court explained, "[I]t is not only state spendthrift trust law that is the 'applicable nonbankruptcy law' for purposes of § 541(c)(2): Federal tax lien law is also an applicable nonbankruptcy law as well." *Id.* at 93. Therefore, the court reasoned, federal tax lien law may render a plan's transfer restriction unenforceable in a tax context, thus pulling the plan outside of § 541(c)(2)'s exclusion. *Id.* The court indicated that policy considerations favored its conclusion as well: "Outside bankruptcy, the IRS would have an enforceable lien against the debtor's vested right to receive a future stream of pension income despite spendthrift provisions in the pension plans. There is no evidence that in enacting § 541(c)(2) Congress intended the intervention of bankruptcy to alter the IRS's powers as a tax creditor." *Id.* Therefore, the court held that if a federal tax lien could attach to a debtor's interest in the plan in a nonbankruptcy context, the plan would become property of the bankruptcy estate under § 541. *Id.*

In *Jones v. IRS,* 206 B.R. 614 (Bankr. D.D.C.1997), the court examined whether a

---

**4.** Moreover, two courts have interpreted *Anderson* to imply that even if a pension plan is excluded from the bankruptcy estate, a tax lien can be properly attached in order to make the IRS's claim "secured." *See In re Carlson,* 180 B.R. 593, 594 (Bankr.E.D.Cal. 1995) ("Debtor has a beneficial interest in a

... pension plan. This right to receive payments... is a property interest to which the [IRS] may attach a lien. Therefore, Debtor's objection of the [IRS]'s secured status is without merit and must be overruled"); *In re Fuller,* 204 B.R. 894, 900–02 (Bankr.W.D.Pa. 1997) (same).

federal tax lien would attach to a debtor's interest in a thrift savings plan (TSP), notwithstanding the fact that the TSP's anti-alienation provision would normally render it excluded from the estate under § 541(c)(2). The court held that a tax lien attached to the interest in the TSP at least to the extent of preserving the right of levy. *Id.* at 617. The court relied on the fact that interests in ERISA plans and other trusts "are subject to seizure by levy under 26 U.S.C. § 6331(a) because 26 U.S.C. § 6334(c) provides that no properties other than those specifically listed in § 6334(a) shall be exempt from levy 'notwithstanding any other law of the United States.'" *Id.; see also Shanbaum v. United States,* 32 F.3d 180, 183 (5th Cir. 1994) (plain language of § 6334(c) demonstrates that ERISA pension benefits are subject to IRS levy despite ERISA's requirement that pension plan contain anti-alienation clause); 26 C.F.R. § 1.401(a)–13 (IRS has right to enforce against ERISA plan by means of levy under § 6331). The plan at issue in *Jones* was not included in the list of thirteen types of property exempted from levy under § 6334(a). Therefore, the *Jones* court concluded that the IRS's claim was secured by the thrift savings plan because the tax lien would be enforceable outside of the bankruptcy context. *Jones,* 206 B.R. at 617.

A similar analysis was followed in *In re Perkins,* 134 B.R. 408 (Bankr.E.D.Cal. 1991). In *Perkins,* the debtors argued that their interest in an ERISA plan was excluded from the property of the estate, and therefore, the IRS should not be allowed to use it to secure its claim. The court responded, "Fatal to [debtors'] analysis is its failure to deal with the special status of a federal tax lien." *Id.* at 411. First, the court noted that "the government's rights to levy on property subject to a tax lien are extremely broad and limited only by those property interests specifically enumerated by statute—which

do not include the type of pension benefit at issue in this case." *Id.* at 411 (citing *United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 720–21, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985)). The court explained that the Ninth Circuit has held that "while a spendthrift clause may be effective to shield attachment and levy by general creditors against a beneficiary's interest in a trust, such shield is unavailing to attachment and levy of a federal tax lien." *Id.* (citing *Leuschner v. First Western Bank and Trust Co.,* 261 F.2d 705 (9th Cir. 1958)). The court concluded that the debtor's "technical 'property of the estate' argument los[t] its foundational premise" because under § 541(c)(2), applicable nonbankruptcy law included federal tax lien law which does not restrict the transfer of a beneficial interest of the debtor in a trust, regardless of ERISA's anti-alienation provisions. *Id.*

In *In re McIver,* 255 B.R. 281, 284 (D.Md.2000), the court followed the approach utilized by *Lyons, Jones* and *Perkins,* and provided the following summary: "In other words, a debtor's beneficial interest in a trust is property of the estate to the extent that, under federal tax lien law, the IRS could reach the interest outside of bankruptcy, even if the interest would be excluded from the bankruptcy estate under § 541(c)(2) with respect to other creditors."

This Court finds the *Lyons, Jones, Perkins* and *McIver* line of cases persuasive and consistent with the language and policy of ERISA, the Bankruptcy Code and the Internal Revenue Code. In *Patterson,* the Supreme Court concluded that the term "applicable nonbankruptcy law" in § 541(c)(2) referred to "any" other federal or State law, including ERISA. 504 U.S. at 759, 112 S.Ct. 2242. Federal tax lien and levy law is "applicable nonbankruptcy law" that trumps ERISA provisions. Not only can tax liens be enforced "notwith-

standing any other law of the United States," IRC § 6334, but ERISA shall not be "construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C. § 1144(d). Therefore, where the anti-alienation provisions of an ERISA plan could not be enforced against the IRS in a nonbankruptcy context, they cannot be enforced in bankruptcy and the § 541(c)(2) exclusion is not available.

In the instant case, Snyder concedes that a tax lien properly attached to his interest in the Plan,[5] but argues that because the Plan is not yet in pay status, the IRS would not be able to enforce the lien through a levy outside of the bankruptcy context. Snyder is incorrect. As mentioned earlier, the IRS has the right to enforce liens against interests in ERISA pensions by means of levy, as long as the interest in the plan does not fit an exemption under 26 U.S.C. § 6334. *See* 26 C.F.R. § 1.401(a)–13(b)(2); *In re McIntyre,* 222 F.3d 655, 660 (9th Cir.2000) ("ERISA's anti-alienation clause cannot prevent the IRS from undertaking what would otherwise be a valid exercise of its levy authority under 26 U.S.C. § 6331"). This broad right to levy is applicable to unmatured ERISA plans, because the vested right to a future payment is "property" subject to levy and amenable to present valuation. *See Perkins,* 134 B.R. at 411–12; *In re Schaffer,* 1997 WL 580786, 1997 Bankr.LEXIS 841, *7 (Bankr.D.Idaho 1997); *Jones,* 206 B.R. at 617. Even if the levy power has not been exercised, an federal tax lien is enforceable outside of the bankruptcy context in order to ensure priority of the potential exercise of the IRS' right to levy. *Jones,* 206 B.R. at 617.

Snyder does not argue that his interest in the Plan is exempt from levy under § 6334(a). Therefore, Snyder's argument that the IRS is not a secured creditor because it could not levy his interest in the Plan is meritless.

Because the IRS could reach Snyder's interest in the Plan in a nonbankruptcy context, the anti-alienation provisions of the Plan are not enforceable against the IRS. Therefore, the § 541(c)(2) exclusion does not apply and Snyder's interest in the Plan is property of his Chapter 13 estate for the purposes of securing the IRS's tax claim. The bankruptcy court did not err in allowing the IRS's secured claim.

### CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is AFFIRMED.

IT IS SO ORDERED.

---

5. *See e.g., In re Raihl,* 152 B.R. 615, 618 (9th Cir. BAP 1993), where the court held that a federal tax lien attached to an unmatured ERISA plan regardless of whether the plan was excluded from the bankruptcy estate.

"The inalienability of the pension interests does not destroy their character as property or immunize the interest from the attachment of a federal tax lien." *Id.*