BANK ONE OHIO TRUST COMPANY, N.A., as Trustee of the Albin C. Reitelbach Trust, Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant–Appellant.

No. 94–3974.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 4, 1995.

Decided April 4, 1996.

Judith Marie Fisher (briefed), Elizabeth E. Hammond, Jessica K. Ditullio, Bank One, Columbus, OH, for Plaintiff-Appellee.

Gary R. Allen, Acting Chief (briefed), Kenneth L. Greene (argued), Annette Wietecha, Jonathan A. Wasserman, U.S. Department of Justice, Appellate Section, Tax Division, Washington, DC, for Defendant-Appellant.

Before: NELSON, RYAN, and MOORE, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

Under the terms of an Ohio spendthrift trust created in 1980, Frank B. Reitelbach had a beneficial interest in the trust's net income. In 1990, following assessment of a civil penalty for failure to pay federal taxes,

the Internal Revenue Service filed a lien against Mr. Reitelbach's property. The lien had not been released as of May 5, 1993.

On that date the trustee of the spendthrift trust was served with a notice of levy directing that the net trust income due Mr. Reitelbach be paid over to the IRS. The trustee took the position that under the terms of the trust instrument—terms enforceable under Ohio law—Mr. Reitelbach had no property or rights to property reachable by the IRS. The trustee promptly brought a wrongful levy action.

On cross-motions for summary judgment the district court upheld the position of the trustee and entered a permanent injunction against execution of the levy. *Bank One Ohio Trust Co., N.A. v. United States,* 857 F.Supp. 592 (S.D.Ohio 1994). For the reasons that follow, we shall reverse the judgment.

# I

The spendthrift trust in question was created by Frank Reitelbach's father under an agreement with the plaintiff trustee, Bank One Ohio Trust Co., N.A. The trust agreement provided for division of the trust estate into shares, with all of the net income from each beneficiary's share being payable to the beneficiary.

In the first sentence of Article VIII, § C(6), of the trust agreement it was provided that "[n]o income or principal payable to or held for the benefit of any beneficiary shall be alienated, disposed of or in any manner encumbered while in the possession of the Trustee otherwise than by the authorized act of the Trustee." We shall refer to this sentence as the "spendthrift provision."

The next sentence of Article IV, § C(6), read as follows:

"If by reason of any act of any such beneficiary, or by operation of law, or by the happening of any event, or for any other reason except an act of the Trustee authorized hereunder, any of such income or principal shall, or except for this provision would, cease to be enjoyed by such beneficiary, or if, by reason of an attempt of any such beneficiary to alienate, charge or encumber the same, or by reason of the bankruptcy or insolvency of such beneficiary, or because of any attachment, garnishment or other proceeding, or any order, finding or judgment of court either in law or in equity, the same, except for this provision, would vest in or be enjoyed by some other person, firm or corporation otherwise than as provided herein, then the trust herein expressed concerning such income and/or principal shall cease and determine as to such beneficiary."

We shall refer to this sentence as the "forfeiture provision."

Article IV, § C(6), went on to provide that upon the cessation of the trust as to a beneficiary pursuant to the forfeiture provision, the income and principal in question should be held or disbursed by the trustee according to its absolute discretion. The trustee could, in its discretion, make payments to the former beneficiary, or to any dependent of his, or to any other beneficiary under the trust agreement, but the trustee could not be required to do so. (The terms of this discretionary trust provision are quoted in full in the district court opinion, 857 F.Supp. at 593, and we shall not repeat the language here.) Taken together, the provisions of Article IV, § C(6), created what is sometimes called a "protective trust." See *United States v. Riggs Nat'l Bank,* 636 F.Supp. 172, 175 (D.D.C.1986).

In the year 1985, it appears, Frank B. Reitelbach failed to meet a federal tax obligation. A penalty in the amount of 100 percent of the tax was assessed against him on March 13, 1989, pursuant to 26 U.S.C. § 6672. Mr. Reitelbach failed to pay the assessment. In March of 1990, pursuant to the tax lien statute, 26 U.S.C. § 6321, the IRS filed a tax lien document for recordation in the office of the county recorder of Mr. Reitelbach's home county. The tax lien document reflected an unpaid balance of $41,547.42.

On May 3, 1993, Bank One was served with an administrative levy notice in which the IRS purported to attach all net trust income due Mr. Reitelbach under the spendthrift trust, up to a total of $55,457.56. (The

notice indicated that the unpaid balance of the assessment was \$35,176.03, while "statutory additions" accounted for the remaining \$20,281.53.) The document recited that although the notice and demand required by the Internal Revenue Code had been made, the amount owed had not been paid.

The code section authorizing administrative levies, § 6331, provides in pertinent part that "[i]f any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary [of the Treasury] to collect such tax . . . by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax." In letters to the IRS Bank One asserted that Mr. Reitelbach no longer had a right to any income under the terms of the trust agreement and under Ohio law. Because Mr. Reitelbach had no statutory "property or rights to property," the bank told the IRS, there was nothing to which the levy could attach; "the income from the Trust is not subject to levy and must be held by Bank One, as trustee, in accordance with the Trust Agreement."[1] In support of its position the bank cited *Scott v. Bank One Trust Co., N.A.,* 62 Ohio St.3d 39, 577 N.E.2d 1077 (1991), and *Domo v. McCarthy,* 66 Ohio St.3d 312, 612 N.E.2d 706 (1993), where spendthrift trusts were held to be enforceable in Ohio.

Pursuant to 26 U.S.C. § 7426(a)(1), the bank filed its wrongful levy action in November of 1993. Cross-motions for summary judgment followed in due course. The district court, as we have seen, granted summary judgment to the bank and denied the government's summary judgment motion. The government has perfected a timely appeal.

## II

■ The tax lien statute, 26 U.S.C. § 6321, creates a lien on "all property and rights to property" belonging to any person who, being liable to pay any tax, neglects or refuses to pay the tax after demand. The United States Supreme Court has described the statutory language as "broad" and reflective of a congressional intent "to reach *every* interest in property that a taxpayer may have." *United States v. National Bank of Commerce,* 472 U.S. 713, 719–720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985) (emphasis supplied). "Stronger language," the Court has repeatedly said, "could hardly have been selected to reveal a purpose to assure the collection of taxes." *Id.* at 720, 105 S.Ct. at 2924, quoting *Glass City Bank v. United States,* 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945). Section 6321 is part of a "formidable arsenal of collection tools," we are told, the common purpose of which "is to ensure the prompt and certain enforcement of the tax laws. . . ." *United States v. Rodgers,* 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983).

■ Section 6321 does not create any property rights, of course; it "merely attaches consequences, federally defined, to rights created under state law. . . ." *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958). But although state law defines "the nature of the legal interests which the taxpayer had in property . . . sought to be reached by the statute," *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960), quoting *Morgan v. Commissioner,* 309 U.S. 78, 82, 60 S.Ct. 424, 426–27, 84 L.Ed. 585 (1940), "[t]he question whether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law." *National Bank of Commerce,* 472 U.S. at 727, 105 S.Ct. at 2928. See also *United States v. Safeco Ins. Co. of America, Inc.,* 870 F.2d 338, 340 (6th Cir.1989) ("state-law limitations upon the ability of general creditors to reach a taxpayer's property do not affect the attachment of federal tax liens because the state-law consequences flowing from a property interest properly defined under state

---

1. The bank has never suggested that the penalty assessed against Mr. Reitelbach in 1989 was not a "tax" within the meaning of that term as used in 26 U.S.C. §§ 6321 and 6331. For purposes of this opinion, therefore, we shall assume that Mr. Reitelbach owed the IRS a "tax" in the amount of \$55,457.56.

law 'are of no concern to the operation of the federal tax law' ").

■ In the case at bar the taxpayer, Mr. Reitelbach, started out with a state-law right to receive the income on his share of the trust assets. If the trustee failed to pay him the income, Mr. Reitelbach could compel payment by suing the trustee. See Bogert, *The Law of Trusts & Trustees*, § 861 (2d ed. rev. 1982). Federal law did not create this equitable income interest, but federal law must be applied in determining whether the interest constitutes "property" for purposes of § 6321. Federal law must also be applied in determining the consequences that attach to ownership of the interest. See *21 West Lancaster Corp. v. Main Line Restaurant, Inc.*, 790 F.2d 354 (3d Cir.1986), holding that a liquor license which did not constitute property and could not be reached by creditors under state law was nonetheless "property" under federal law and could therefore be the subject of a federal tax lien under 26 U.S.C. § 6321. Accord, *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168 (6th Cir.1990), *cert. denied*, 501 U.S. 1212, 111 S.Ct. 2815, 115 L.Ed.2d 987 (1991).

■ The spendthrift provision in Article IV, § C(6), of the trust agreement clearly imposed restraints on the alienation of Mr. Reitelbach's interest. The spendthrift provision said that the interest was not to be alienated, or disposed of, or encumbered in any manner—and, as would be true in most states, these restraints on alienation are enforceable in Ohio. "In Ohio, a spendthrift provision of a trust, when applicable, will be given full force and effect." *Domo*, 66 Ohio St.3d 312, 2nd Syl., 612 N.E.2d at 707 (following *Scott*, 62 Ohio St.3d 39, 577 N.E.2d 1077).

■ Under the great weight of federal authority, however, such restraints on alienation are not effective to prevent a federal tax lien from attaching under 26 U.S.C. § 6321. See *United States v. Rye*, 550 F.2d 682, 685 (1st Cir.1977); *United States v. Dallas Nat'l Bank*, 152 F.2d 582, 585 (5th Cir. 1945); *First Northwestern Trust Co. of South Dakota v. Internal Revenue Service*, 622 F.2d 387, 390 (8th Cir.1980); *Leuschner*

*v. First Western Bank & Trust Co.*, 261 F.2d 705, 707–708 (9th Cir.1958). A contrary position was taken in *In re Wilson*, 140 B.R. 400, 407 (Bankr.N.D.Tex.1992).

Each of the cited appellate court decisions appears to be consistent with the view—a view we share—that state-law restraints on the alienation of property rights created under the state law do not affect the status of such rights as "property" or "rights to property" within the meaning of those terms as used in § 6321. A restraint on alienation is "not an aspect of the substantive right," and thus "cannot serve to defeat the federal tax lien." *Rye*, 550 F.2d at 685.

Alienability is, to borrow the term used in *Bess*, a "consequence" as to which federal tax law is controlling. See *Rodgers*, 461 U.S. at 683, 103 S.Ct. at 2137 ("it has long been an axiom of our tax collection scheme that, although the definition of underlying property interests is left to state law, the consequences that attach to those interests is a matter left to federal law"). Thus when Congress says, as it has done in § 6321, that an unpaid tax "shall" constitute a lien upon "all" of a delinquent taxpayer's property or rights to property, it follows that the tax is a lien both on property that is alienable under state law and on property that is not.

If we are correct in this view, a federal tax lien arose in the case at bar when penalties were assessed against Mr. Reitelbach in 1989. See 26 U.S.C. § 6322 ("the lien imposed by section 6321 shall arise at the time the assessment is made"). And the lien attached to all of Mr. Reitelbach's property, including his interest in the trust, when he failed to make payment after demand therefor. See *United States v. Big Value Supermarkets, Inc.*, 898 F.2d 493, 496 (6th Cir. 1990) ("A federal tax lien arises once an assessment occurs, and it attaches once the taxpayer fails to pay the taxes after demand has been made"). The record does not disclose when the first demand for payment was made here, but it cannot have been later than March of 1990, when the IRS filed its lien document for recordation.

### III

■ It was not until May of 1993, as we have seen, that Bank One was directed, through the notice of levy, to start paying Mr. Reitelbach's trust income to the IRS. The bank argues that the notice of levy triggered the trust's forfeiture provision, ending Mr. Reitelbach's income interest and converting a trust that had theretofore been non-discretionary into a discretionary trust. Mr. Reitelbach could have had no interest subject to attachment in a discretionary trust.

As a matter of logic, it seems to us, there is much to be said for the proposition that any diversion of the income stream from Mr. Reitelbach to the United States by reason of the levy would have been sufficient, under the forfeiture provision, to terminate Mr. Reitelbach's property interest. As a matter of federal law, however, it seems clear that any such termination of Mr. Reitelbach's interest would have been too late to defeat the government's right to the money.

Under 26 U.S.C. § 6331(a), as noted in Part I of this opinion, the Secretary of the Treasury is authorized to levy not only upon property of the delinquent taxpayer, but also upon property "on which there is a lien [for payment of the delinquent tax]." As demonstrated in Part II of the opinion, the government's lien attached to the income stream several years before the levy was made. It is therefore immaterial that Mr. Reitelbach's interest might have disappeared, like a bursting bubble, when the notice of levy was served in 1993. The government having obtained its lien in 1989 or 1990, the government could enforce the lien regardless of what became of Mr. Reitelbach's interest thereafter.

We are strengthened in this conclusion by *United States v. Comparato*, 22 F.3d 455 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 481, 130 L.Ed.2d 394 (1994). There the Court of Appeals for the Second Circuit held that once a federal tax lien attaches to an interest in an estate, the lien cannot be defeated by a subsequent renunciation of the interest in question. This result is compelled by federal law, the court held, notwithstanding that under state law the renunciation

would be effective retroactively. In the same vein see *United States v. Mitchell,* 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971), and *Rodriguez v. Escambron Dev. Corp.,* 740 F.2d 92 (1st Cir.1984). If an existing federal tax lien cannot be defeated by a retroactive termination of the underlying property interest, it seems to us, a termination that is not retroactive certainly cannot defeat the lien.

The judgment of the district court is **REVERSED**, and the case is **REMANDED** with instructions to enter summary judgment in favor of the government.