**In re Jerome C. RICHARDSON, Vernell Richardson, Debtors.**

No. 02–16678.

United States Bankruptcy Court, D. Maryland, at Greenbelt.

March 24, 2004.

Leslie S. Auerbach, Auerbach and Simmons, Camp Springs, MD, for Debtor.

Nancy L. Spencer Grigsby, Bowie, MD, trustee.

### MEMORANDUM OF DECISION

DUNCAN W. KEIR, Bankruptcy Judge.

A hearing was held on November 5, 2003 to consider the Debtors' Objection to the Proof of Claim filed by the United States Internal Revenue Service (the "IRS"). Upon consideration of the arguments presented, the court made an oral ruling at the hearing and informed the parties that the court was going to reduce its findings and conclusions to a written opinion. In accordance with its oral ruling, the court finds that the claim of the IRS for unpaid income taxes is not an allowed secured claim in the bankruptcy case to the extent of the Debtors' interest in an ERISA-qualified pension fund. Ac-

cordingly, the Debtors' objection is sustained.

## I. BACKGROUND

The Debtors filed a voluntary bankruptcy petition on June 4, 2002 under Chapter 13 of the United States Bankruptcy Code. The IRS filed a Proof of Claim in Debtors' case in the amount of $156,879.94, with $120,070.00 categorized as secured.[1] The Proof of Claim is based on tax assessments for unpaid income taxes for the 1992, 1993, 2000 and 2001 tax years.

On October 30, 2002, Debtors filed an Objection to the IRS Proof of Claim stating that the current fair market value of the Debtors' property, after deducting the balance due upon debts secured by liens having priority above the tax lien, is $21,224.00. Accordingly, the Debtors assert that the secured claim of the IRS should be allowed in the amount of $21,224.00 pursuant to 11 U.S.C. § 506(a)[2] and the remaining portion (hereinafter the "Potential Unsecured Claim") should be treated as an unsecured claim.

The IRS filed a Response to Debtors' Objection. In its response, the IRS concedes that the value of the Debtors' interest in real property alone is insufficient to secure the Potential Unsecured Claim. However, Mr. Richardson has sufficient interest in a retirement plan to secure such claim.[3] Consequently, the IRS maintains that its Potential Unsecured Claim is entitled to treatment as a secured claim.

## II. ISSUE

There are no disputes of fact in this case. The parties agree that Mr. Richardson has an interest in an ERISA-qualified retirement plan and that such plans are normally excluded from the bankruptcy estate under the United States Supreme Court decision entitled *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). The parties further agree that outside of bankruptcy, Mr. Richardson's retirement plan is subject to the lien of the IRS despite the anti-alienation provision in the retirement plan that protects Mr. Richardson's interest from attachment by other creditors. *See* 26 U.S.C. § 6321. The parties disagree, however, on whether the Potential Unsecured Claim is entitled to treatment as an allowed secured claim in the Debtors' bankruptcy case.

## III. ANALYSIS

■ In addressing this issue, the court finds it useful to differentiate between a debt or a claim and an allowed claim. A debt is what one party owes another party under applicable nonbankruptcy law.[4] Similarly, a claim is defined in Section 101(5) as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 105(5). An allowed claim, on the other hand, is an entitlement to the holder of the right to re-

---

1. The IRS filed Notices of Federal Tax Lien for the 1992 and 1993 tax years in Prince George's County, Maryland.

2. Hereafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code unless otherwise noted.

3. The Debtors scheduled the value of Mr. Richardson's interest in his retirement plan at $90,000.00.

4. Black's Law Dictionary, Sixth Edition, defines "debt," in part, as: "A specified sum of money owing to one person from another, including not only obligation of debtor to pay but right of creditor to receive and enforce payment."

ceive a distribution from the bankruptcy estate and/or the right to specific treatment under either a Chapter 11 or Chapter 13 plan. In order to hold an allowed claim in a Chapter 7 or Chapter 13 bankruptcy case, a creditor must hold a claim and must comply with Section 502.[5] Additionally, to have an allowed *secured* claim, the allowed claim must be collateralized in the manner set forth in Section 506(a)[6].

■ There is a distinction under the provisions of Chapters 11 and 13 of the Bankruptcy Code as to the type of minimum non-consensual required treatment in a confirmable plan for an allowed secured claim, as opposed to an allowed unsecured claim. The issue in this case is which standard of treatment applies to the Potential Unsecured Claim of the IRS. If the Potential Unsecured Claim is an allowed secured claim, as argued by the IRS, then a confirmable plan must treat the claim in a manner consistent with Section 1325(a)(5).[7] If the Potential Unsecured

Claim of the IRS is an unsecured claim, then the plan need only treat the claim as required by Sections 1322(a)(2) and (3), as applicable, and Section 1325(a)(4).[8] However, this court's determination as to whether the Potential Unsecured Claim of the IRS is an allowed secured claim or an allowed unsecured claim will have no effect on the right of the IRS to collect the tax debt directly from the pension plan pursuant to the remedies available to the IRS under the Internal Revenue Code.

■ The plain meaning of Section 506(a)[9] is that a secured claim exists only when an allowed claim is secured by property in which the estate has an interest. Section 541 of the Bankruptcy Code provides that property of the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case," except as provided in subsections (b) and (c)(2). 11 U.S.C. § 541. Generally, restrictions on the transfer of a debtor's interest in prop-

**5.** Section 502(a) provides: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." In Chapter 11, an allowed claim may also arise under circumstances enunciated in Section 1111.

**6.** Section 506(a) provides, in part: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property."

**7.** Section 1325(a)(5) provides: "Except as provided in subsection (b), the court shall confirm a plan if with respect to each allowed secured claim provided for by the plan: (A) the holder of such claim has accepted the plan; (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective

date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or (C) the debtor surrenders the property securing such claim to such holder."

**8.** Section 1322(a)(2) and (3) provide: "The Plan shall: (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and (3) if the plan classifies claims, provide the same treatment for each claim within a particular class."

Section 1325(a)(4) provides: "Except as provided in subsection (b), the court shall confirm a plan if the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date."

**9.** See Footnote 6.

erty do not operate to prevent the inclusion of the property interest in the bankruptcy estate. *See* 11 U.S.C. § 541(c)(1). An exception to this exists, however, in Section 541(c)(2), which states that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." In *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the United States Supreme Court concluded that this reference to "nonbankruptcy law" found in Section 541(c)(2) includes federal as well as state law, including ERISA. Accordingly, the Supreme Court determined that a debtor's interests in an ERISA-qualified retirement plan, which plan contains restrictions on assignment or alienation, are excluded from the bankruptcy estate pursuant to Section 541(c)(2). *See id. See also Employment Retirement Income Security Act of 1974,* 29 U.S.C. § 1001 et seq.

Consequently, in this case, the lien of the IRS in the Debtors' interest in Mr. Richardson's pension plan is not "a lien on property in which the estate has an interest." Therefore, such lien does not result in the Potential Unsecured Claim of the IRS being a secured claim since a secured claim is limited by the express words of Section 506(a)—"to the extent of the value of such creditors' interest in the *estates' interest* in such property." (Emphasis added.) It is important to note, however, that such a conclusion does not eviscerate the lien of the Internal Revenue Service on the Debtors' interest in the pension plan.

Section 6321 of the Internal Revenue Code ("IRC") allows a federal tax lien to attach "upon all property and rights to property, whether real or personal," belonging to a delinquent taxpayer. 26 U.S.C. § 6321.[10] This provision allows federal tax liens to attach to a taxpayer's interest in his/her retirement plan, regardless of any anti-alienation provisions contained in the retirement plan. *See Bank One Ohio Trust Co., N.A. v. United States,* 80 F.3d 173, 176 (6th Cir.1996). Stated differently, "outside of bankruptcy, the IRS stands in a different position from ordinary creditors in that the anti-alienation provisions in ERISA-qualified pension plans are not enforceable against it." *United States Internal Revenue Service v. Snyder,* 343 F.3d 1171, 1174 (9th Cir.2003).

Several courts have relied on Section 6321 of the IRC to hold that a debtor's interest in an ERISA-qualified pension plan becomes property of the bankruptcy estate for the limited purpose of securing the IRS allowed claim under Section 506(a) of the Bankruptcy Code where an IRS tax lien has attached to the debtor's interest in the pension plan under federal tax law. This is, in effect, the holding of a decision by the United States District Court for the District of Maryland in *In re McIver,* 255 B.R. 281 (D.Md.2000).[11] In *In re McIver,* the United States District Court for the District of Maryland relied on Section 6321 of the IRC to hold that a debtor's rights in TIAA/CREF annuities were property of the bankruptcy estate and could be used to

---

**10.** 26 U.S.C. § 6321 provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property,

whether real or personal, belonging to such person."

**11.** It is also the holding of an unreported decision of this court in *In re Hartso,* 1998 WL 419578 (Bankr.D.Md.1998) (Keir, Bankruptcy J.). The court now repudiates its conclusion in *In re Hartso.*

secure the allowed claim of the IRS under Section 506(a) of the Bankruptcy Code.

Here, the IRS relies on *In re McIver* and the unique treatment afforded to it under Section 6321 of the IRC to assert that because the anti-alienation provision of Mr. Richardson's retirement plan is not enforceable against the IRS under "applicable nonbankruptcy law," then Section 541(c)(2) does not exclude his interest in the retirement plan from the bankruptcy estate for the limited purpose of securing the Potential Unsecured Claim. This would allow the IRS to have an allowed secured claim up to the value of the Debtors' interest in the retirement plan. If the IRS is correct, the IRS will have an allowed secured claim of $111,224.00 versus an allowed secured claim of $21,224.00 as the Debtors assert. The result of having a higher allowed secured claim would be that once the Debtors' plan is confirmed by the bankruptcy court, the plan must provide for payment of the secured claim of the IRS in full, from monies paid into the plan during the life of the Chapter 13 plan. *See* 11 U.S.C. § 1325(a)(5)(B)(ii).[12]

In light of subsequent decisions in this Circuit and elsewhere, the Debtors have requested that the court revisit the issue addressed in *In re McIver*. Specifically, the Debtors urge the court to follow those decisions finding that a qualified pension plan is excluded from the bankruptcy estate despite being subject to an IRS lien outside of bankruptcy. *See In re Wingfield*, 284 B.R. 787, 2002 WL 1869398 (E.D.Va.2002); *In re Keyes*, 255 B.R. 819 (Bankr.E.D.Va.2000).[13] Included among the more recent decisions relied upon by the Debtors is a decision by the United States Court of Appeals for the Ninth Circuit entitled *United States Internal Revenue Service v. Snyder*, 343 F.3d 1171 (9th Cir.2003). For the following reasons, the court finds the reasoning adopted by the Ninth Circuit Court of Appeals persuasive and holds that the Potential Unsecured Claim of the IRS is not secured within the meaning of Section 506(a) by the Debtors' interest in an ERISA-qualified pension plan, notwithstanding that the debt is collateralized outside of bankruptcy by the pension plan.

As already mentioned, Section 541(c)(2) carves out an exception to what property is included in a bankruptcy estate. "[I]t provides that trust anti-alienation provisions otherwise enforceable under nonbankrupt-

---

**12.** A second possible result of having an allowed secured claim to the extent of the Debtors' interest in the retirement plan is that the Debtors may never achieve confirmation of a Chapter 13 plan since the IRS claim would have to be paid in full over the life of the plan. It appears unlikely that the Debtors can fund a plan at a level sufficient to achieve full payment of the IRS claim. As the Debtors may not have access to the retirement plan until it is in a payout status, which usually only occurs upon a person's retirement or disability (unlike an Individual Retirement Account), it is unlikely that the Debtors have the financial resources to otherwise fund a plan with such a high allowed secured claim. *See United States Internal Revenue Service v. Snyder*, 343 F.3d 1171, 1174 (9th Cir.2003). The IRS does not argue that a determination that its claim is secured to the extent of the Debtors' interest in the retirement plan would have the effect of overriding the ERISA-required distribution restrictions placed upon the pension plan. If the pension funds are not available to the Debtors to fund the plan for distribution to the IRS by the Chapter 13 Trustee, the plan would have to be funded by other financial resources.

**13.** In two recent opinions, the United States Bankruptcy Court for the Eastern District of Virginia held that a debtor's interest in an ERISA-qualified pension plan is not property of the bankruptcy estate for the limited purpose of securing a lien by the IRS for unpaid taxes. *See In re Robinson*, 301 B.R. 461 (Bankr.E.D.Va.2003); *See also In re Grant*, 301 B.R. 464 (Bankr.E.D.Va.2003).

cy law will operate in a bankruptcy estate to prevent the transfer of the debtor's interest in the trust to the bankruptcy estate." *United States Internal Revenue Service v. Snyder*, 343 F.3d. at 1178. Thus, under the plain language of Section 541(c)(2) and in accordance with the decision reached in *Patterson v. Shumate*, Mr. Richardson's interest in his ERISA-qualified pension fund was never transferred to the Debtors' bankruptcy estate. As previously stated, Section 506(a) requires that an allowed secured claim of a creditor be secured by a lien on property in which the estate has an interest. Property in which the estate has no interest cannot be the basis for bankruptcy treatment of a claim (funded by the bankruptcy estate) as an allowed secured claim.

The effect of the court's determination is that the IRS will not be able to use Section 1325 as a vehicle to collect taxes for the IRS.[14] Rather, the IRS will be able to share as an unsecured creditor in the pro rata distribution from estate property through the Chapter 13 Plan. Additionally, the IRS will continue to hold the right to pursue the ERISA fund directly under Section 6321 of the Internal Revenue Code; however, relief from the automatic stay must be sought while the Debtors remain in bankruptcy. Alternatively, the IRS can wait to pursue the pension plan until the conclusion of the bankruptcy case. As the United States Court of Appeals for the Ninth Circuit concluded, this is not an inequitable result, rather such a holding merely prevents the IRS from using the Debtors' bankruptcy to accelerate payment of the liens, or from using the liens to prevent confirmation of a Chapter 13 plan that could reduce or eliminate the IRS's non-lien debt. *See United States*

*Internal Revenue Service v. Snyder*, 343 F.3d at 1179.

## IV. CONCLUSION

For these reasons, the Debtors' Objection to the proof of claim of the Internal Revenue Service is sustained. An order conforming to this Opinion will be entered.

---

14. For the reasons stated in Footnote 12, if the Potential Unsecured Claim was allowed as a secured claim, payment of such claim from a confirmed plan would likely be from non-pension plan funds, drastically reducing the estate assets available to pay those creditors having no right to collect from the pension funds outside of the bankruptcy case.